## Illinois State Board of Health v. The People ex rel., etc.

1. PRACTICE OF MEDICINE—*Powers of the Board of Health to Determine Whether a Medical College is in " Good Standing."*—The State Board of Health is possessed of discretionary power to determine whether a medical college is in good standing, within the meaning of the statute (Laws, 1887, p. 225), and defined in its resolutions, and when it has determined that question in favor of an applicant for license to practice medicine it has exhausted its discretion and can not refuse him such license for arbitrary reasons of its own.

2. MANDAMUS—*Will Not Lie to Compel the Performance of Duties Which Necessarily Call for the Exercise of Judgment and Discretion.*—The writ of mandamus will not lie to compel the performance of acts or duties which necessarily call for the exercise of judgment or discretion by an officer or body at whose hands such performance is required, unless it is made clearly to appear that there has been an abuse of discretion by the officer or body or such evasion of positive duty as amounts to a virtual refusal to perform the required duty.

Mandamus.—Error to the Superior Court of Cook County; the Hon. JAMES GOGGIN, Judge presiding. Heard in the Branch Appellate Court at the October term, 1901. Reversed. Opinion filed July 2, 1902.

WARWICK A. SHAW, attorney for plaintiff in error.

McDANNOLD, SULLIVAN & JARRETT, attorneys for defendant in error.

MR. JUSTICE SHEPARD delivered the opinion of the court.

In this case a petition for mandamus was filed by the relator to require the plaintiff in error to issue and deliver to the petitioner their certificate entitling and empowering him to practice medicine in the State of Illinois. The Superior Court ordered a peremptory writ of mandamus to issue, and this writ of error is brought in consequence.

The statute of 1887, entitled " Medicine and Surgery," under which it is admitted the petition in this case was filed, provides, in section 2 thereof, that the State Board of Health "shall issue certificates to all who furnish satisfactory proof of having received diplomas or licenses from legally chartered medical institutions in good standing, as may be determined by the board," and the first section of the statute contains a provision substantially the same, with reference to applicants who rely upon a diploma. Laws of 1887, State Edition, pp. 225 and 226.

It appears from the petition that the basis upon which the relator relies to support the application he made to the State Board of Health for a certificate, is a diploma, dated March 22, 1894, received by him from the Medical Department of the University of Tennessee, at Nashville, which diploma, it is averred, authorized him to practice medicine anywhere in the State of Tennessee, and he avers that in pursuance of such authority he has practiced medicine in three of the States of the Union.

The defense to the petition, as set up in the answer thereto, though somewhat clumsily expressed, is that the medical department of the University of Tennessee was not, at the time the diploma was issued to the relator, a medical institution in "good standing," within the meaning of the statute above quoted from, as determined by the Board of Health—in that students therein were required to take a regular course of study of only two years, instead of four years as required by the rules and regulations of the Illinois State Board of Health. And a resolution of the State Board of Health, on the subject, adopted prior to the year 1890, is set forth in the answer, as follows :

" Resolved, that medical colleges in good standing, in the first section of the act to regulate the practice of medicine in the State of Illinois, approved June 16, 1887, is hereby defined to include only those colleges which shall, after sessions of 1890–91, require four years of professional study, including any time spent with a preceptor, and three regular courses of lectures as conditions of graduation, and shall otherwise conform to the schedule of minimum requirements heretofore adopted by the board."

It is conceded by the relator that the General Assembly has power to pass laws regulating the health and happiness of citizens of the State, and to prescribe such reasonable conditions as are calculated to exclude those who are unfitted to discharge their professional duties; but he does insist that when a diploma is presented from a college of another State for registration and license, that such registration and license must be refused, if refused, because the college granting the diploma is not in "good standing," according to the rules of the State Board of Health, and not be arbitrarily refused.

And upon this proposition he predicates an argument that the diploma relied on in this case was arbitrarily refused by the State Board of Health.

It is undoubtedly the law that the State Board of Health is possessed of discretionary power to determine whether a medical college is in "good standing," within the meaning of the statute and as defined in its resolution above quoted, and that when the board has determined that question in favor of the applicant, it has exhausted its discretion, and may not refuse a license for arbitrary reasons of its own. Dental Examiners v. The People ex rel., 123 Ill. 227; State ex rel. Johnson v. Lutz, 136 Mo. 633.

But an examination of the answer, and of the correspondence between the parties in this case, shows most satisfactorily that the refusal to grant the license in question was because the medical department of the University of Tennessee was not in "good standing" within the rules adopted by the board. If there is in the record anything which shows that the University of Tennessee has brought itself within the statute of this State and the rule of the State Board of Health, subsequent to the issuance of the diploma in question, it is immaterial for the purposes of this case. The question here is whether the medical institution was in good standing at the time the diploma was issued, and that inquiry, upon investigation, has been answered by the State Board of Health adversely to the applicant, and is not subject to review by mandamus pro-

ceedings. Mandamus will not lie to compel the performance of acts or duties which necessarily call for the exercise of judgment and discretion by an officer or body at whose hands their performance is required, unless it is made clearly to appear that there has been an abuse of discretion by the officer or body, or such an evasion of positive duty as to amount to a virtual refusal to perform the required duty. People ex rel. v. Dental Examiners, 110 Ill. 180; Dental Examiners v. People ex rel., 123 Ill. 227.

The judgment of the Superior Court awarding a writ of mandamus was clearly erroneous, and it is reversed without remanding the cause.