THE STATE *ex rel.* JOHNSTON V. LUTZ *et al.*

In Banc, December 23, 1896.

136   633
84a 584

1. **State Board of Health:** APPLICATION TO PRACTICE MEDICINE: CERTIFICATE.  The state board of health can not refuse a certificate permitting an applicant to practice medicine in this state because the medical college from which he received his diploma had not complied with a resolution of the board requiring medical colleges by a certain time to furnish the board with a list of its matriculates and the basis of their matriculation, where the evidence shows that the applicant graduated before the college received notice of the resolution.

2. ———: ———: ———.  Such applicant was not required to submit to an examination by the board of health as provided for by Revised Statutes, 1889, section 6874, in relation to applicants who are not graduates.

3. ———: ———: ———: COLLEGE IN GOOD STANDING: STATUTE.  "Good standing" as used in Revised Statutes, 1889, section 6872, providing that the state board of health "shall issue certificates to all who shall furnish satisfactory proof of having received diplomas or licenses from legally chartered medical institutions in good standing of whatever school or system of medicine," means good reputation, and must be established in the same way as the latter.

4. ———: ———: ———: ———: MANDAMUS.  Though *mandamus* will not lie to compel the board of health to issue a certificate to practice medicine on the ground that the college from which the applicant received his diploma is not of "good standing," it is otherwise where the certificate is refused because the applicant does not submit to an examination not required by the statute as to his qualifications to practice medicine.

5. ———.  The state board of health can exercise such powers only as are conferred by the statute creating it.

*Mandamus.*

PEREMPTORY WRIT AWARDED.

*Pope & Belch* for relator.

(1) *Mandamus* is the proper remedy for relator in this case.  *Mansfield v. Fuller*, 50 Mo. App. 338;

*State ex rel. v. Joplin Waterworks*, 52 Mo. App. 312; *Barnes v. Gottschalk*, 3 Mo. App. 111. (2) The relator has done all that is required of him by the law, and the issuing of the certificate is a mere ministerial act, the performance of which may be compelled by *mandamus*. *State ex rel. v. Hathaway*, 103 Mo. 22; *State ex rel v. Strother*, 42 Mo. App. 343. (3) Section 8 of the board's rules can not apply to relator, he having graduated before the rule was put in force.

*R. F. Walker*, attorney general, for respondents.

(1) The granting of certificates to holders of diplomas involves matters of judgment and discretion on the part of the state board of health and will not be enforced by *mandamus*. Wherever an element, shred or degree of discretion enters into a duty to be performed, the functions of mandatory authority are shorn of their potency and become powerless to dictate terms to that discretion. *State ex rel. v. Gregory*, 83 Mo. 123; *State ex rel. v. Hathaway*, 103 Mo. 22; *State Med. Ex. Board*, 32 Minn. 324; *People v. Dental Ex.*, 110 Ill. 180. (2) Relator had his remedy at the time the board refused to recognize his diploma. It was not *mandamus*, but by procuring from the college issuing the diploma a list of its matriculates and the basis of their matriculation. This would have removed the only objection urged by the board and rendered its duty merely ministerial. Not having done this, the board was left in the exercise of its judgment and discretion, and *mandamus* is not the remedy. (3) It is elementary that the state may, in the exercise of its police power, prescribe the conditions upon which persons may, within its borders, engage in the skilled trades and learned professions and, if it is deemed wise so to do, provide a board of experts for each calling to

conduct examinations and prescribe rules upon the compliance with which persons may be authorized to ply trades or practice professions.   Tiedeman on Police Power, section 87; *State v. Hathaway*, 115 Mo. 36.

BURGESS, J.—This is a proceeding by *mandamus* to compel the respondents, as the state board of health, to issue to the relator a certificate authorizing and permitting him to practice medicine and surgery in this state.

On the eighteenth day of March, 1896, relator was graduated at the Physio-Medical College of Indiana, located at Indianapolis in that state, and on the same day received therefrom a diploma, regular in form, and signed by the professors in said college.   In the month of July next thereafter he appeared before said board of health, presented his diploma, tendered the fee of $1 allowed by statute in such cases, and made application for a certificate authorizing him to practice medicine and surgery in this state. The certificate was refused on the ground as alleged in the return to the writ that the college issuing the diploma was not, in the judgment of the board, a "medical institution in good standing," within the meaning of the statute; the grounds of this conclusion being that the board had, prior to the presentation of the diploma by relator, passed a resolution and mailed a copy of same to each medical college in the United States requiring them to furnish the board, on or before January 1, 1896, a list of their respective matriculates and the basis of their matriculation, and that the said Physio-Medical College had not complied with this order; and also upon the further ground that upon announcing its refusal to grant the certificate, the board stated to relator that it would permit him to be examined, and, if found qualified, grant him a cer-

tificate. Relator declined to be examined, and instituted this proceeding against the board.

On April 19, 1894, the board of health adopted a rule prescribing certain conditions upon which medical students might be admitted to the lecture course, and requiring the secretary of the board to notify all medical colleges that said rule would go into effect February 1, 1895; and on the twenty-eighth day of October, 1895, said board passed another resolution requiring all medical colleges *in the state of Missouri* to report to the board by January 1, 1896, a list of all their freshmen class, sessions of 1895 and 1896, with the qualifications on which they were admitted to the school.

In order to make all the resolutions adopted by the board apply alike to all medical colleges in the United States said board on said twenty-eighth day of October, 1895, further resolved that, "as a further condition of the recognition of any medical college as being in good standing the college shall furnish the secretary of the state board of health, on or before January first every year, a complete list of all of its matriculates together with the basis upon which such applicant matriculated giving the name of the institution from which a degree or certificate of graduation was obtained, or the name of the state official conducting the examination, or the college previously attended, together with the date when the degree or certificate was issued. This last to be sworn to by the executive officer of the college and attested by the secretary under the seal of the college."

On January 6, 1896, the board of health passed another resolution instructing its secretary to refuse registration of the diplomas of any medical college which had not complied with the conditions imposed upon colleges by the resolution above quoted of

October 28, 1895, and published in the Missouri *Sanitarian* of the month of November next following.  At the same time it was further ordered that copies of the *Sanitarian* in which all the proceedings of the board were from time to time published be sent to all the medical colleges in the United States.

It was shown by the secretary of the board that he sent copies of the Missouri *Sanitarian* containing all of said resolutions, to all of the medical colleges in the United States, including that of which relator was a graduate, but he did not state when or how they were sent, whether by mail or otherwise.  Dr. Lutz a resident of the city of St. Louis, Missouri, and president of the board, testified that in the latter part of October, 1895, so far as he could recollect, he sent a printed notice of the requirements of the board in a properly sealed envelope to every medical college in the United States, setting forth the requirements of the board and calling their attention to them, but that the Physio-Medical College of Indiana had not complied with the requirements of the board and had not sent them a list of its matriculates, nor informed them in any way that it would comply with the requirements of the board concerning the qualifications of students, or of those who are about to begin the study of medicine.

On the other hand Dr. Bedford testified that he had been secretary of the faculty of the Physio-Medical College for a number of years, perhaps as many as ten or twelve, and as such receiver of all communications addressed to the college, and that at no time prior to 1896 was there received by the college or by him as secretary of its faculty, any communication from the state board of health of Missouri pertaining to the methods of work or requirements of said college. That on the twenty-fourth day of June, 1896, he

received through the mail, inclosed in an envelope, addressed to the Physio-Medical College of Indiana, C. T. Bedford, M. D., secretary, a slip of printed matter purporting to be the minimum requirements of the state board of health of Missouri. The envelope and the printed requirements contained therein, were introduced in evidence. The envelope is stamped St. Louis, June 23, and addressed to "Physio-Medical College Indiana, Indianapolis, Indiana, C. L. Bedford, M. D., secretary." It also has printed on the address side the words "State Board of Health of Missouri, Willis P. King, M. D., secretary, Kansas City, Missouri." On the reverse side it bears the stamp of the post office at Indianapolis, Indiana, which shows that it reached there at 4 A. M., June 24, 1896.

It will thus be seen that while the evidence on the part of the respondents tended to show that the notice was sent by the secretary and president of the state board of health to the Physio-Medical College at Indianapolis, Indiana, in 1895, the witnesses testified from memory only, and were indefinite as to the exact time, though Dr. Lutz stated that he thought it was in the latter part of October of that year. On the part of the relator we have the positive statements of the secretary of the faculty of the medical college that no such notice was received by that institution or by himself as secretary, until the twenty-fourth day of June, 1896. In corroboration of his statements there were produced in court, and introduced in evidence, the identical notice and envelope in which it was inclosed, the envelope bearing the marks and letters before indicated. Under these circumstances we think the decided weight of the evidence was in favor of the relator; that the notice was not sent to said college until June 23, 1896, and relator having theretofore

graduated, was in no way affected by the failure of the college to comply with said rules.

While the return to the alternative writ alleged that the medical board refused to grant relator the certificate applied for on the grounds that the medical college was not of good standing, and because he declined to submit to an examination by the board as provided for by section 6874, Revised Statutes, 1889, with respect to applicants for certificates to practice medicine by persons who are not graduates, all material facts stated in the return were traversed by relator, and as no reply was filed thereto or issue taken thereon by respondents, by demurrer or otherwise as required by statute (sec. 6813, Revised Statutes, 1889), the allegations in the plea by relator to the return in which it was alleged that the certificate was refused because of a noncompliance by the medical college with the rules of the state board must be taken as confessed.

Moreover, the evidence plainly showed that the certificate was refused upon that ground and the refusal of the relator to submit to an examination by the board touching his qualifications. The president of the state board of health, Dr. Lutz, testified that he found the name of the Physio-Medical College of record in the list of colleges furnished by the Illinois state board of health, and that said list is considered standard in the United States. This would seem to settle the question as to the good standing of the college, but there was abundant evidence aside from that of Dr. Lutz to the same effect.

Good standing as used in the statute simply means good reputation, and must be proven in the same way. But the board undertook to establish a rule of its own, by which such good standing shall be shown, that is, by requiring all medical colleges to furnish to it a list of their respective matriculates and the basis of their

matriculation, and, in this, went beyond the power conferred upon it by statute, from which it derives its origin, and by which its duties and authority are defined.

It may be conceded that, if the certificate had been refused upon the ground that the Physio-Medical College was not of good standing as required by section 6872, Revised Statutes, 1889, *mandamus* would not lie to compel the board to issue it because that question is, under the statute, within the judgment and discretion of the board to determine (*State ex rel. v. Gregory*, 83 Mo. 123; *State ex rel. v. State Med. Examining Board*, 32 Minn. 324; *The People ex rel. v. Dental Examiners*, 110 Ill. 180), and in such circumstances *mandamus* is not the proper remedy, but as has been said the certificate was refused upon entirely different grounds, which did not involve matters of discretion or of judgment.

While the members of the medical board are to be commended for their endeavors to elevate the standard of practitioners of medicine and surgery, in passing as a board upon the applications of such persons for certificates to practice their profession, and in prescribing rules and regulations to that end, they must keep within the limits of the statute creating it, and this it did not do. As relator had a diploma from a medical college in good standing, he was under no obligations to submit to an examination by the board, nor had it any authority to require him to do so as a prerequisite to granting him a certificate to practice medicine in this state. We therefore shall award a peremptory writ. All concur except BARCLAY, J., who concurs specially as stated by him.

BARCLAY, J. (*concurring*).—It appears from the pleadings and evidence that the refusal of a certificate

to relator was based on supposed noncompliance by the Indiana college with a rule of the Missouri state Board, and not upon any judgment of the Board that said college was not of good standing, generally.   My concurrence is given to the finding in the foregoing learned opinion touching the issue of notice to the college of that rule of the Board, and to the granting of a peremptory mandamus based on that finding.   But the validity of the rule of the Board has not been called in question by the relator.   It seems to me preferable not to express an opinion upon it.   The Board is vested with authority to determine what medical colleges are of "good standing," within the meaning of the law. It is evident that there was no intention on the part of the Board to apply the rule to persons graduated by this college until the latter had notice of the rule.   The relator received his diploma before the rule became operative as to that institution, and hence (according to the concession of the Board) the rule can not properly be held to interfere with the granting of his certificate to practice in this State.   Further than that the present case does not require us to go.