## 7037

### STATE *EX REL.* MAULDIN v. MATTHEWS.

Mandamus—Officers—Official Boards.—The Court may compel by mandamus an official board vested with discretionary powers to perform an act which it refuses to do in consequence of a conclusion it has reached without any foundation in the facts before it, which act in the opinion of the Court is capricious and arbitrary. Here the Court issues mandamus to the board of pharmaceutical examiners requiring it to grant a license to an applicant holding a diploma from the University of Maryland and holds that under the statute defining the duties of the board it is unwarranted in holding the University of Maryland is not a reputable college because it does not require of its graduates four years' practical work.

Petition in the original jurisdiction of this Court by John M. Mauldin for writ of mandamus to require the board of pharmaceutical examiners to grant him a license to practice pharmacy.

*Messrs. Oscar C. Mauldin* and *W. Christie Benet,* for petitioner.

*Mr. W. M. Dunlap,* contra.

October 30, 1908. The opinion of the Court was delivered by

Mr. Justice Woods. The statute law of the State provides that the board of pharmaceutical examiners, consisting

of six pharmacists, elected by the pharmaceutical association of the State of South Carolina, "shall alone possess and exercise the powers of granting, withholding or vacating the license of pharmacists, apothecaries and druggists." The statute requires the board to subject every applicant to examination before issuing a license, making, however, an exception in these words: "No examination shall be required in case the applicant is a regular graduate in pharmacy from any reputable college; but such applicant shall be entitled to a license upon furnishing evidence of his graduation satisfactory to the said board and upon payment of the fee of five dollars."

At a regular examination appointed by the board, the petitioner, John M. Mauldin, appeared, presented a diploma showing his graduation from the University of Maryland, Department of Pharmacy, otherwise called Maryland College of Pharmacy, and, without claiming the benefit of the exception as to college graduates, offered to take the examination. The board excluded him from the examination on the ground that he had not complied with the board's requirements as to conditions of granting a license, that the applicant "had served not less than four years with a druggist or apothecary." Thereafter, the petitioner presented his diploma, tendered the fee of five dollars and demanded a license without examination as a regular graduate in pharmacy from a reputable college. His demand having been refused, the petitioner now applies to this Court for a writ of mandamus requiring the board to issue to him a license. The board, by its return, alleges that it cannot be compelled by mandamus to issue the license, because it acted in a judicial capacity in refusing it, on the grounds that the applicant is without sufficient experience, and that he does not hold a diploma from a reputable college. The board further alleges that it does not wish to reflect upon the University of Maryland, but it holds it not to be a reputable college, because:

"(1) That it does not require as a prerequisite to receiving its diploma that the candidate shall have had such practice and experience in drugs, etc., as to make it safe to the public for him to practice pharmacy in the State of South Carolina; and,

"(2) That said college only requires two terms of six months each for said candidate to study and receive his diploma, which period and course of study are too short and inadequate to properly fit any person to practice pharmacy."

In the *State ex rel. Smith* v. *Matthews*, 77 S. C., 357, 57 S. E., 1099, it was held the statute confers on the board of examiners the power to determine whether the college from which the applicant graduated is reputable, that the power involves the exercise of discretion not subject to control or review by mandamus, except where it clearly appears the board has failed to exercise reasonable discretion and has arbitrarily refused a license. The general rule is everywhere recognized that the writ of mandamus will not issue to control the judgment or discretion of a public officer, but only to require the performance of a plain, ministerial duty. *State ex rel. Fouche* v. *Verner*, 30 S. C., 277, 9 S. E., 113; *State* v. *Whitesides*, 30 S. C., 579, 9 S. E., 661; *State ex rel. Burnett* v. *Burnside*, 33 S. C., 276, 11 S. E., 787; *Abbeville* v. *McMillan*, 52 S. C., 60, 29 S. E., 540.

Whether the courts can control the action of officers or official boards, vested with discretionary power, when they refuse to act in consequence of a conclusion they have reached, which is without any foundation in the facts before them, and, therefore, in the view of the Court, capricious or arbitrary, is a question of some difficulty. But it must be answered in the affirmative, on principle as well as authority. This was the view indicated, not only in *Smith* v. *Matthews, supra,* and *Commissioners* v. *Lynah,* 2 McCord, 170, but by Lord Mansfield in *Rex* v. *Askew,* 4 Burr, 2186, 16 Eng. R. Cases, 760, where the application was to compel the admission of a physician to practice; and it is in accord with the

weight of authority.  *Ex parte Burr*, 9 Wheat, 529, 6 L.
Ed., 152; *Ex parte Virginia*, 100 U. S., 339, 25 L. Ed.,
676; *Ex parte Bradley*, 74 U. S., 364, 19 L. Ed., 214; *At-
lanta* v. *Wright* (Ga.), 45 S. E., 994; *St. Louis* v. *Mfg. Co.*,
139, Missouri, 560, 61 Am. St., 474; *Wood* v. *Strother*, 76
Cal., 545, 9 Am. St., 249; *Ill. State Board Dental Exam-
iners* v. *People* (Ill.), 13 N. E., 201.

The courts should exercise, however, the utmost circum-
spection not to substitute their own discretion for that of the
officer or board, whose refusal to act is under consideration;
and to interfere by mandamus only when the facts so clearly
show the duty of the officer or board to act, that there is
really no room for the exercise of reasonable discretion
against the doing of the act which the Court is asked to
require performed.   In other words, the courts should inter-
pose only where it clearly appears that the officer or board
refuses to perform official duty, or so misconceives official
power or duty that the purpose of the law will be defeated.
The practice of pharmacy being a legitimate and useful bus-
iness, it was clearly not within the legislative intent that any
citizen should be excluded from it by the arbitrary will of the
board of examiners.   The board subjects itself to being held
within its duties by mandamus when it so misconceives its
duties and power that its exactions amount to imposition on
the applicant of terms and conditions not contemplated by
the statute.

The statute provides that a regular graduate in pharmacy
from any reputable college shall be *entitled* to a license.
The evidence is full and conclusive that the Maryland Col-
lege of Pharmacy is held in high esteem by physicians and
pharmacists.   Indeed, we do not understand the respond-
ents seriously to question that this is a fact.   But their
position is that they believe it unsafe for the public for one
to compound drugs, who has not had at least four years' of
such practical experience as service for that period under a
druggist or pharmacist would give; that they should not

recognize as reputable a college which does not require practical experience in its laboratories or under a pharmacist, either or both together, for a period of four years; that the Maryland College of Pharmacy does not require that period of service under a druggist or in their laboratory, but only two terms of study and laboratory work of eight months each; and, therefore, they cannot recognize that college as reputable. Clearly, the respondents, in taking this position, have misconceived their duty and power. It was shown at the hearing that there is ground for the difference in opinion among pharmacists and colleges of pharmacy as to the value of four years' service in a drug store before graduating in pharmacy. The undisputed evidence was that the University of Michigan, Vanderbilt University, Northwestern Chicago, Cleveland School of Pharmacy, Albany College of Pharmacy, New York College of Pharmacy (Department of Columbia University), and National College of Pharmacy at Washington, D. C., do not require the four years' service insisted on by the respondents, their reason being that the time is better spent in acquiring general knowledge in school or college. Some other colleges of high reputation, like the University of Virginia, still require the four years' practical work.

The question is not whether Maryland College of Pharmacy ought to have all the requirements that the respondents think essential to make capable pharmacists. The statute does not confer on the board of pharmaceutical examiners the power to exact of a college compliance with its own standards. On that point the General Assembly has assumed the responsibility of danger to the public, and has directed that licenses be issued to graduates of reputable colleges—that is, colleges of whose character those of the public, having general acquaintance with the subject, entertain a good opinion. Maryland College of Pharmacy, being a college of which such good opinion is entertained, is a reputable college, the board of examiners had, therefore, no discretion to refuse

to issue the license to the petitioner, who is one of its graduates.

It is, therefore, ordered, That the writ of mandamus do issue requiring the respondents, constituting the board of pharmaceutical examiners, to issue to the petitioner a license as a pharmacist, upon payment by him of a fee of five dollars.