ODOM, Justice.
 

 This is a proceeding brought by relator Paul G. Charbonnet, Jr., against the Board of Architectural Examiners, created by Section 3, Act 231 of Í910, and the Department of - Occupational Standards, created by Act 13 of 1942, to compel the Board and the Department to issue to him a certificate or license to practice the profession of architecture in Louisiana. There was judgment in favor of relator, and against the Board and the Department, ordering them to issue the certificate or license as prayed for. From this judgment the defendants appealed.
 

 Section 1, Act 231 of 1910, provides that, from and after the promulgation of the act, no person except those already engaged in the practice of architecture shall practice said calling or profession within this state “unless such person shall possess all the qualifications required by this Act.”
 

 Section 2 of the act reads as follows:
 

 “Be it further enacted, etc., That from the promulgation of this Act any person, before entering upon the practice of architecture shall present to the Board of Architectural Examiners, as hereinafter constituted, a diploma from an architectural college or school of good standing; said standing to be determined by the Board, or shall pass a satisfactory examination before the Board upon the following, to wit: (Architectural Engineering, Architectural Design, Architectural History and Architectural Drawing.)
 

 “The person shall also satisfy the Board that he is twenty-one years of age, of good moral character, and possesses at least a good primary education. If said diploma or examination are [is] satisfactory to the Board they shall issue to such person a certificate in accordance with the facts.”
 

 Relator alleged that he possessed all of the qualifications prescribed by the statute as necessary in order to obtain a certificate or license to practice his profession. He is a graduate of the College of Engineering of Tulane University, having received therefrom the degree of Bachelor of Science in Architecture on June 11, 1941, after completing the full prescribed course leading to this degree. He also received from the College of Engineering of Tulane University the degree of Bachelor of Architecture on May 2, 1942, after completing the full prescribed course leading to that degree. He alleged that Tulane University, from which he received these degrees, is a university of good standing; that he presented to the Board of Architectural Examiners
 
 *235
 
 certificates or diplomas showing that these degrees had been, conferred upon him, tendered to the Board the required fee, and requested that the Board grant him a certificate or license to practice the profession of architecture, and that the Board had refused to do so, and that its refusal was arbitrary and unlawful.
 

 In a letter written by the Board to relator, dated May 22, 1942, the Board stated its reasons for refusing to grant a license or certificate to be that:
 

 “The rules of the Board require that you
 
 must
 
 have at least three years of practical training in an office of an accredited architect in addition to the degree' of Bachelor of Architecture from an accredited school, or take the State examination.”
 

 Paragraph 12 of the answer filed by the Board of Architectural Examiners reads as follows:
 

 “Answering Paragraph 12 of the petition, respondent shows that the School of Architecture in the College of Engineering of Tulane University in so far as the courses that are prescribed and taught are concerned is a school in good standing, but that in administering the Act, that is Act 231 of the Legislature of Louisiana for the year 1910, respondent has not formally approved said school,
 
 or any other school of archi
 
 tecture, as a school in good standing so as to entitle graduates thereof to be licensed without examination, in that said school does not require that graduates of said school complement their course-of study in said school with three years of practical experience in the office of a reputable licensed architect, which respondent shows that it has required of graduates of all architectural schools before the issuance of a license without the necessity of an examination. That said requirement on the part of respondent is reasonable, and within its sound discretion, which has been vested in respondent by law.” (Italics ours.)
 

 It was proved at the trial of the case that Tulane University is a member of the Association of Collegiate Schools, and that, before it could become a member, it was necessary that an inspection and check of its curricula be made and approved. It was proved that the School of Architecture in the College of Engineering pf Tulane University is a school of good standing, which fact has never been questioned. It was shown that the course of study included instruction in Architectural Engineering, Architectural Design, Architectural History, and Architectural Drawing, as prescribed by Act 231 of 1910. It was also shown that the credits which students obtained in the School of Architecture of Tulane University are recognized and accepted by schools of architecture at other leading universities in the United States. Mr. Richard Koch, president of the Board of Architectural Examiners, and Mr. Joseph Bernard, a member of that. Board and its secretary, are architects of high standing and have beeen practicing their profession for many years. They testified that they found no fault with the course of study given in the School of Architecture of Tulane University. Mr. Bernard testified that his son is now taking that course there. Mr. Koch and Mr. Bernard said that the Board of Examiners had not formally approved the School of Architecture of Tulane Universi
 
 *237
 
 ty, or any other school of architecture, as a school or schools “of good standing”, and that the Board had never issued, and would not now issue, a certificate or license to practice architecture to applicants who had not complemented “their course of study in said school with three years of practical experience in the office of reputable licensed architects”.
 

 Counsel for appellants said in his brief at page 3 :
 

 “Defendant, Board of Architectural Examiners, defended the suit on the ground that a license could not be issued to plaintiff without examination unless plaintiff could show that after graduating from Tulane University he had complemented his course of study in said institution with three years of practical experience in the office of a reputable licensed architect, which defendant alleged it had required of graduates of all architectural schools before the issuance of a license without the necessity of an examination.”
 

 According to counsel’s statement in his brief and according to the pleadings and the evidence adduced at the trial, the sole issue involved in this case is whether the Board of Architectural Examiners, appointed under the provisions of Act 231 of 1910, may refuse to issue a permit or license to practice architecture to one who presents a diploma from an architectural school or college of good standing and who possesses all the other qualifications required by the act, on the ground and for the reason that the applicant has not met the additional requirement prescribed by the Board of complementing his course of study with three years’ practical experience in the office of a reputable licensed architect; in other words, whether the Board of Examiners is vested with the power and authority, under the law, to prescribe such qualifications as it sees fit, in addition to those prescribed by the act, as conditions precedent to its issuance of a license to practice architecture.
 

 The contention of the Board is that, under Act 231 of 1910, it is vested with such authority, because, while the act provides that any person, before entering upon the practice of architecture, shall present to the Board “a diploma from an architectural college or school of good standing”, yet the act further provides that “said standing [shall be] determined by the Board”, and that “If said diploma or examination are . [is] satisfactory to the Board they shall issue to such person a certificate in accordance with the facts.”
 

 If the contention of the Board be well founded, it has the power and authority to set aside the plain provisions of the act and substitute its judgment for that of the Legislature, by refusing to recognize a diploma issued by any school of architecture in the country on the sole ground that in its opinion the graduates of well recognized schools of architecture of good standing should not be permitted to practice their profession until they have complemented their course of study with three years of practical experience.
 

 Clearly, we think, the members of the Board of Examiners have misconceived their duty, power, and responsibility. The Legislature itself .has prescribed the quali
 
 *239
 
 fications of architects and has assumed the responsibility of permitting those who hold diplomas from schools of architecture of good standing to practice the profession of architecture in this state. The Legislature did not intend to confer upon the Board of Examiners the arbitrary authority and power which it is assuming in this case. The Board cannot substitute its judgment for that of the Legislature.
 

 The testimony of Mr. Bernard, a member and secretary of the Board of Examiners, strongly indicates, we think, that the members of the Board are themselves in doubt as to whether they have authority under the law to prescribe additional requirements which must be met by applicants for certificates to practice their profession. He testified that the architects of the state had “for a number of years attempted to have the Legislature pass a new act in order to broaden it and in order to more specifically define just what were the functions and duties of an architect
 
 and to give the Board more discretion in carrying on its work".
 
 (Italics are the writer’s.) He testified that he and other architects had repeatedly gone before the Legislature, urging that the act be amended or that a new act be adopted with provisions coinciding with the views of the architects, but that the Legislature had never seen fit to change the act until 1942, when a new act was approved by both houses of the Legislature but was vetoed by the Governor.
 

 Counsel for defendants cite the case of State ex rel. Texas Grading Co. v. Buie, State Highway Engineer, 144 La. 39, 80 So. 191, and the other cases decided by this court, in support of the general rule that courts are without power to control the discretion which is vested in public officials. That is the general rule, but that rule is subject to the qualification that, where such discretion as is vested in the members of a public board is grossly abused or illegally or abitrarily exercised, mandamus will lie to correct the abuse.
 

 In the case of State ex rel. Mauldin v. Matthews, 81 S.C. 414, 62 S.E. 695, 22 L.R. A.,N.S., 735, 128 Am.St.Rep. 919, 16 Ann.Cas. 182, it was held that the State Board of Pharmacy, which was required by statute to grant a druggist’s license to a graduate “of any reputable college of pharmacy”, might be compelled by mandamus to grant such license to such graduate, “where it has refused to do so because the college from which he graduated does not, in its estimation, require sufficient practical work from students to fit them to compound drugs with safety to the public”.
 

 In that case the Supreme Court of South Carolina said:
 

 “Generally mandamus does not lie to control the judgment or discretion of a public [official], lying only to require performance of a plain ministerial duty; but courts can control officers or official boards vested with discretionary power, when they refuse to perform official duty or so misconceive official power or duty that the purpose of the law will be defeated.”
 

 Other cases in point are State ex rel. Johnston v. Lutz, 136 Mo. 633, 38 S.W. 323, and Illinois State Board of Dental Examiners v. People ex rel. Cooper, 123 Ill. 227, 13 N.E. 201.
 

 
 *241
 
 In Bowen v. City of Schenectady, 136 Misc. 307, 240 N.Y.S. 784, 789, the court had under consideration an act with respect to the examination and registration of architects, and the court said:
 

 “The act under consideration expressly declares that its object is to safeguard life, health, and property. Evidently it is adapted to accomplish those purposes. The practice of architecture demands learning, skill, and integrity. The Legislature has the right to prescribe the qualifications of those engaged in this important work.”
 

 Under the general heading “Mandamus”, 34 Am.Jur. p. 963, § 189, the general rule relating to the issuance of professional licenses is stated at length. It is stated that the extent to which a board may be controlled in the exercise of its duty “in granting professional licenses depends largely on the powers granted to the board. If the board is invested with judicial power to pass on the qualifications of the applicants for licenses or discretionary power to issue the licenses, mandamus will not lie to review an exercise of such judgment or discretion. * * * When, however, a board invested with discretionary powers abuses its discretion or exercises it arbitrarily with manifest injustice, mandamus will lie to correct the abuse. The statutes of several states provide that members of certain classes of professional persons may receive licenses to practice their professions on the production of a diploma of a ‘reputable school or college in good standing’, or of schools described by words of similar import. In the interpretation of these statutes it has been held that the decision of a board as to what schools or colleges are within their terms is an exercise of a discretionary power and cannot be controlled by the courts through writ of mandamus, unless the discretion is clearly abused or exercised with manifest injustice”.
 

 We think the Board of Architectural Examiners is acting arbitrarily and is abusing the discretion vested in it by law.
 

 The defendants filed certain exceptions, which were overruled by the trial judge. We think there is no merit in any of them.
 

 For the reasons assigned, the judgment appealed from is affirmed.