DORÉ, Judge.
This is a mandamus proceeding instituted by relator Ferdinand J. Montegut to compel respondent, Louisiana State Board of Dentistry, to issue a license to relator to practice dentistry in the State of Louisiana during the year 1949 and subsequently thereto without requiring him to take an examination and' without imposing any other conditions and restrictions on him before issuing such a license.
From a judgment rejecting his demand and dismissing his suit, with written reasons assigned therefor, relator appealed to the Supreme Court. On April 23,. 1951, finding that it lacked jurisdiction of the subject matter, the Supreme Court transferred the case to this court. 219 La. 307, 52 So.2d 862.
As previously stated, the trial judge gave written reasons for his judgment, which are as follows:
“This is a suit instituted by relator, Ferdinand J. Montegut, seeking a writ of mandamus directed to the Louisiana State Board of Dentistry, hereinafter called respondent, commanding it to issue a license to him to practice dentistry in the State of Louisiana without requiring him to take an examination and without imposing any other conditions or restrictions upon him before issuing such a license.
“His suit is premised upon the contention that he has been practicing his profession of dentistry openly and to the full knowledge of the respondent for many years and that under the doctrine of the case of State ex rel. Louisiana State Dental Society v. Louisiana State Board of Dentistry, 177 La. 1112, 150 So. 292, and hereinafter referred to as the Dental Society case, he is entitled to a formal license without any examination or any other restrictions or conditions attached thereto.
“Respondent was created by Act 334 of 1940 [LSA-RS 37:751 et seq.], which amended previous acts creating previous dental boards and providing for their authority 'and responsibilities and duties. Reference to the -acts of the Legislature indicates that the first act creating a dental board was Act 88 of 1900. This was ■amended in 1928 by Act 253 and by the present act of 1940. An examination of the 1940 Act indicates that respondent has ■as one of its duties the conducting of examinations and ascertaining qualifications, and fitness of applicants seeking licenses to practice dentistry, and to issue the proper licenses and renewals therefor. Plaintiff attacked this act as being unconstitutional but since he has not emphasized such, either in oral argument or by brief, the court must presume that he has abandoned this contention, and hence, it will not be discussed here.
*60 “Since plaintiff’s whole case depends upon whether respondent’s actions have been illegal and arbitrary in failing to issue him a license, taking into consideration the law as enunciated in the Dental Society case, the case (court) will first discuss that decision.
“In that case the Louisiana State Dental Society, joined by four dentists, filed a mandamus action to compel the Louisiana State Board of Dentistry to recall and vacate licenses it had previously issued to four dentists in the City of New Orleans. A study of the record indicates that all of the dentists involved in that litigation, except Dr. Dillon, had been issued licenses many years prior to the institution of the suit to practice their profession of dentistry, and that all of them were qualified by training and experience to so practice. As to Dr. Dillon, he was listed upon the records of the State Board of Dentistry as practicing without a license. However, it wa< shown that he had presented to the Board a Certificate of Dr. Val Irion, the then secretary, showing that he had been always recognized as a qualified dentist by the late Boards and the secretary, and entitled to practice his profession in the State of Louisiana, and that he had never been disturbed by the late Boards and secretary in his practice. It was shown that he had openly practiced his profession for over 18 years and that he was a man of high character and well qualified to practice in the State.
“The Supreme Court in refusing to issue the mandamus to the State Board, among other things, stated the following:
“ ‘Considering the fact that these respondents have been practicing dentistry in this state for years past, and have been recognized by former state boards of dentistry as lawfully practicing their profession, it must be presumed in law that respondents complied with the provisions of Act No. 88 of 1900, under which they were licensed or 'allowed to practice by the state board, and for this reason, the provisions of Act No. 253 of 1928 do not apply to them. Besides, there is no provision in Act No. 88 of 1900 that requires any examination upon any specific subject, nor any diploma from any dental college as a prerequisite to obtaining a license to practice dentistry in this state. * * *
“ ‘It follows, necessarily, that the issuance of licenses by former state boards, of dentistry, created under Act No. 88 of 1900, or permission by them to practice, fixed the status of respondents as legal practitioners of dentistry in this state. The respondents are, by no means, new applicants for license for the first time under Act No. 253 of 1928; but they are veterans in the practice, who have been already licensed or permitted to practice for years under for-mfer state boards of dentistry.’
“With reference to the knowledge and consent of the State Dental Board to his practicing dentistry, in the present case, relator first alleged that ‘he has been permitted under the knowledge of the State Dental Board to practice dentistry without a license; that during the period which Dr. V. K. Irion was the head of the Louisiana State Dental Board, he visited Dr. Montegut’s office on several occasions and discussed his dental practice with him, and they discussed the fact that he did not have a license and they reached an understanding that Dr. Irion would issue him a license, that he unfortunately died, shortly after they reached such an agreement, so he continued to practice dentistry without a license’.
“To that petition respondent filed an exceptions of no cause and no right of action and the court concluded that the allegations above quoted did not bring plaintiff within the doctrine of the Dental Society case, and sustained the exceptions, but rather than to dismiss his suit, gave him a period of ten days in which to amend it in order to bring himself within the doctrine of that decision. Thereafter, plaintiff amended his petition, going into great detail as to the alleged knowledge of the Board of 'his activities.
“On the trial of the case plaintiff in substance testified that he was born in New Orleans, Louisiana, on July 26, 1898, and that he started the study of dentistry at the age of 12 years while working for a Doc *61 tor Rodriguez, and bis two sons, who operated a dental parlor in the City of New Orleans. He testified that while working for Dr. Rodriguez he would ask them questions and read their books and thereby learned a great deal about the practice of dentistry and while continuing to work there he started doing a little work of his own, while off from work at Dr. Rodriguez’s parlors, and at home. He testified that after so studying and practicing for some years -he went to see Dr. Irion, then secretary of the State Dental Board, for a license and that Dr. Irion recommended that he attend the Bodee School of Prosthetic Dentistry in New York. He entered this school in June of 1919 (1918) and after studying at the Bodee School for one year he received his diploma and returned to New Orleans, and saw Dr. Irion who told him to go ahead and practice which he began to do in about 1920. He stated that he established an office on Touro Street and practiced for some ten years, that in the year 1926 (1925) a suit was instituted by Dr. Irion in the Parish of Orleans seeking to enjoin and restrain him from practicing dentistry, but that soon after being served with the petition he went to see Dr. Irion and at Dr. Irion’s suggestion he worked or practiced with a Dr. S. P. Robinson, who was a duly licensed dentist; that, thereafter, he went with Dr. Robinson and worked with him for 3 or 4 years,' during which time he went with Dr. Robinson to see Dr. Irion about a renewal license, and there paid $5.00, for a renewal license. He further testified that Dr. Irion visited his office often and knew he was practicing dentistry and that he was never bothered thereafter by the State Dental Board or Dr. Irion. He also testified that he not only practiced in New Orleans, but also in adjoining towns, as an itinerant dentist, and for several years came to Baton Rouge on Saturday and did work on various patients. In addition to this the relator testified that he had studied all of the subjects dealing with dentistry, such as anatomy, oral surgery, histology, prosethetics, etc. He further testified that he had always enjoyed a high class clientele, and made his living entirely from the practice of dentistry.
“A large number of apparently well-to-do colored people, among whom were two M.D.s and two dentists, came from New Orleans to Baton Rouge to testify on behalf of the plaintiff, and all testified that he had done dental work on them which was entirely satisfactory. In addition to these colored people there were four white people who testified that they had been patients of relator and that his work was entirely satisfactory. From this testimony the court must conclude that either the plaintiff is a good dentist or at least that many of his patients believe him to be so.
“The respondent produced all of the records from the beginning into court in response to a writ of subpoena duces tecum gotten out by the relator, and relator and his attorney had the privilege of examining all of these records. These records consisted of all the minutes of the meetings of the various Boards.of Dentistry going back as far as 1900. They also consisted of all copies of receipts for licenses and also all the applications made in connection with the securing of licenses, and Dr. De-Nux, as secretary, testified that relator’s name was not mentioned in any of the minutes from 1900 on, nor does his name appear in any of the other books or records of the respondent. He further testified that in 1926 when the plaintiff stated that he paid $5.00 for a renewal license that the renewal fee was $2.00. He further testified that he had a complete record of all license receipts paid from 1900 on, but that the records were not kept prior to 1930, except in 1927, of renewal licenses.
“Also appearing as witnesses for respondent were several colored dentists from the City of New Orleans, which included all of the officers of the New Orleans Colored Dental Society. All of these dentists testified that they had never known plaintiff as a colored dentist, although some knew him socially. The court is inclined to believe that most of them knew he had been practicing dentistry, particularly during recent years. Every member of the present State Dental Board testified that *62 they had never heard of relator until the ■present litigation arose and the court believes this to be true and correct.
“It was also shown that although the plaintiff had alleged in his original petition that he had an understanding with Dr. Irion, while Dr. Irion was still secretary of the Board, that he was going to issue him a license, that unfortunately shortly thereafter, and before the transaction had been consummated, Dr. Irion died, that actually Dr. Irion had lived until 1948. Respondent also offered in evidence a photostatic copy of the suit instituted on June 8, 1925, in the Civil District Court of the Parish of Orleans, wherein the Louisiana State Board of Dentistry filed an injunction proceeding against relator, wherein, among other things, the State Board of Dentistry, through Dr. Irion, alleged that relator was not qualified, 'and had never presented himself for an examination, nor complied with the laws of the state relative to persons desiring to practice dentistry, and that he was, illegally, and to the menace of the public health and welfare of society, engaged in the practice of dentistry in New Orleans. These .proceedings also contained an order signed on the same day by Judge G. K. Skinner, temporarily restraining relator from practicing dentistry in the State of Louisiana. It is indeed difficult to reconcile the allegations of this petition with the testimony of the relator, that Dr. Irion was advising him, helping him, and telling him to proceed with the practice of dentistry, and that a license would be issued to him in due course.
“However, even if plaintiff’s testimony with reference to his contacts with Dr. Irion are taken as true, Dr. Irion was not the Board, but merely its secretary, and the record is entirely barren of any evidence whatsoever that any State Board ever knew that plaintiff was practicing dentistry, except for the suit which was filed for it by the secretary, as already pointed out. Furthermore, plaintiff admits that after the suit was filed he quit practicing in his own name and started practicing with Dr. Robinson, who was a licensed dentist, and continued so practicing for three or four years.
“Furthermore, the record is barren of any reason why relator did not institute this action many years ago and during the lifetime of Dr. Irion. More than twenty years elapsed since the time he said Dr. Irion told him he would issue him a license and the time of Dr. Irion’s death, and he did nothing.
“It must be remembered that the question before this court is not whether the plaintiff is qualified to practice dentistry or whether if it was, the Board would issue a license, but whether the action of the Board has been unreasonable and arbitrary in refusing to issue the license. The law is well settled that courts are without power to control the discretion which is vested in public bodies such as the State Dental Board. Courts have no right to substitute their judgment in lieu of the considered judgment of these administrative boards. Courts have the right to' intercede only where it is clearly shown that the discretion of the Board has been exercised in an illegal and arbitrary manner. The rule is succinctly stated by our Supreme Court in the case of Charbonnet v. Board of Architectural Examiners, 205 La. 232, 17 So.2d 261, 263, as follows: ‘Counsel for defendants cite the case of State ex rel. Texas Grading Company v. Bouie [Buie], State Highway Engineer, 144 La. 39, 80 So. 191, and the other cases decided by this court, in support of the general rules that courts are without power to control the discretion which is vested in public officials. That is the general rule, but that rule is subject to the qualification that, where such discretion as is vested in the members of a public board is grossly abused or illegally or arbitrarily exercised, mandamus will lie to correct the abuse.’
“The rule is similarly stated in American Jurisprudence Volume 34, Mandamus, paragraph 189, and our courts have been uniform in holding that those seeking to obtain relief by writ of mandamus must clearly establish that the governmental official or body against whom the writ is desired has been guilty of unreasonable or arbitrary action in the performance of his or their duties.
*63 “Here considering the question in the most favorable light it is whether relator is entitled to a license under the act in force when he began practicing, Act 88 of 1900. An examination of that act shows, that unlike our present act, considerable discretion was left in the Board as to who should be issued licenses. Relator obviously has very little formal education. His formal training in dentistry is likewise very limited, consisting entirely of a year’s study in prosethetic dentistry. Whether his studies which he enumerated qualify him could only be ascertained by dentists themselves. Admitting that is is in no position to pass on the professional qualifications of relator, this court would say it is at least questionable whether he is professionally eminently so qualified, and the court was favorably impressed by each of them as they appeared on the witness stand. They have decided that he is not qualified and this court fails to find that they acted arbitrarily or illegally in reaching such a decision.
“In the Supreme Court decision relied upon by relator the action was not to force the Dental Board to issue a license, but on the other hand and as its purpose the revoking of four licenses already issued by it. The mandamus in that case was refused by the court. Furthermore, in that case every one of the dentists in question had been recognized by the Dental Board for many years and it was for this reason that the Supreme Court held that the mandamus should not issue. Plaintiff has failed almost completely to show that the previous boards had any knowledge that he was practicing dentistry openly, as he testified had been the case. The only action that he can show that the Board ever took was when it filed a suit to summarily enjoin him from illegally practicing dentistry. Furthermore, plaintiff is asking this court to exercise its equitable powers and it appears to this court that he comes not with clean hands. For over thirty years he has knowingly been violating the law in practicing dentistry without a license knowing full well all the time that he should have one.
“For the above and foregoing reasons judgment will be signed herein rejecting the demands of the plaintiff at his costs.”
The relator has submitted to us the original and the supplemental brief filed in the Supreme Court as well as the original brief filed in this court. The errors which he contends were committed by the lower court appear vague but the most serious error alleged is that the judgment rendered by the lower court is null and void on the ground that the lower court did not decide the case on the issues presented; that in effect no judgment in the case has been rendered and that the case “should be remanded, with instructions that a proper judgment should be rendered, and the lower court should indicate to defendant Board what are plaintiff’s rights in the premises.”
 It appears from his briefs that he contends that the trial judge rendered a judgment “to the effect that the Board had examined the plaintiff and had found him deficient in point of qualifications, and that (he) the lower Judge, agreed with them.” He then quotes from the reason for judgment: “They have decided that he is not qualified, and this court fails to find that they acted arbitrarily or illegally in reaching such decision.” He states that these proceedings were filed’ because the Board refused to examine him at all and that he has never been before the Board for any purpose. We cannot agree with him in his contention. The lower court did not hold that the relator was examined and found lacking. The holding of the court is that relator did make an application for license, to which, application the relator annexed his affidavits and those of several of his friends, including two registered dentists, two medical doctors, a preacher, a sheet metal and roofing contractor, a plastering contractor, etc.; that the said application for license, after due deliberation and consideration by the board, was rejected because the evidence submitted by relator was “insufficient to warrant the issuance of a license to practice dentistry in the State of Louisiana.” Practically all of the persons submitting these affidavits testified before the court. The question of the isso- *64 anee of a license to relator to practice dentistry in the State of Louisiana without requiring’ him to take- an examination and without imposing any other conditions and restrictions on him before issuing such a license was clearly presented to the Board, and like the district judge, we fail to find that the Board acted arbitrarily or illegally in reaching its conclusion in the rejection of the application.'
The trial judge, in his reasons for judgment, has clearly analyzed the evidence in this bulky record; in. fact, the relator does not point to any error committed by him in his detail of the evidence. He has likewise discussed the effect of Act 88 of 1900 and the case of State ex rel. Louisiana State Dental Society v. Louisiana State Board of Dentistry, 177 La. 1112, 150 So. 292. There is very little we could add to the reasons for judgment.
However, we might state that it is indeed passing strange that Dr. Irion would have been zealous in obtaining a license for relator, under Act 88 of 1900, and then have obtained a temporary restraining order. It is our opinion, that after the good Doctor obtained the restraining order, that plaintiff called at the doctor’s office, and the doctor agreed not to push the matter any further if relator would desist. Respondent then agreed to work with Dr. S. P, Robinson in the practice of dentistry. We do not believe that the relator ever paid any fees in 1926 for a renewal license. Had he done so, he would have preserved the receipt therefor and continued to do so, in that Act 88 of 1900 specifically provides for the yearly payment of a license fee. It is shown by the record that Dr. Irion was Secretary to the then Board until sometime in 1929, and only died in March, 194& It was only after the death of Dr. Irion that relator made any attempt to qualify ttnder Act 88 of 1900. To us, relator’s testimony with regard to Dr.' Irion is purely and simply an afterthought.
■ We find no error of fact or in law in the trial court’s reasons for judgment. His judgment is in response to the pleadings, the law and the evidence; for these reasons, the judgment appealed from is affirmed.