WELCH, J.
[gin this mandamus proceeding, a licensing board appeals a judgment of a trial court ordering it to issue a license to an applicant who met all of the statutory requirements for obtaining an electrolysis instructor’s license. We affirm.
FACTS AND PROCEDURAL HISTORY
On August 24, 2004, Pauline Poole, a licensed electrologist for more than five years who completed the statutorily required instructor training, filed an application with the Louisiana Board of Elec *962 trolysis Examiners (Board) to become a licensed instructor of electrology. One statutory requirement for obtaining an instructor’s license is that the applicant successfully achieve a minimum score on an examination administered and approved by the Board. La. R.S. 37:3077(C)(3)(a).
The Board’s Chairperson, Cheri Miller, admitted that although the testing requirement went into effect in 2001, the Board did not begin to create an examination for the instructor’s license until 2004, after learning that Ms. Poole was applying for an instructor’s license. After submitting her application, Ms. Poole was advised that she would be given both a written test and a practical examination, but was not provided with details regarding the practical examination.
The evidence reflects that the Board did not formulate the practical portion of the examination until the day it administered the test to Ms. Poole. According to Ms. Miller, four members of the five-member Board met before the test and agreed that Ms. Poole would be graded on personal appearance, knowledge of subject matter, planning and preparation, student involvement and motivation, teaching methods and models, relationship with students, and communication skills. Board member Maureen Calloway testified that prior to the date that Ms. Poole sat for her written test, there had been no decision by the Board to require a practical portion of the examination. Ms. Calloway attested that she was “amazed” when the Board |stold Ms. Poole that she would be given a practical examination that day.
Ms. Poole took the written portion of the test, which she passed. The written test contained an instruction regarding the practical examination, in which Ms. Poole was apprised that she would be given ten minutes to prepare a lesson plan and deliver a lecture to the Board. The written portion of the test did not state what the topic would be. Ms. Poole prepared a lesson plan and appeared before the Board to give her lecture. However, she was told to present a lecture instead on the topic of “skin and hair.” This topic had not been decided upon until shortly before Ms. Poole entered the room. Ms. Poole was told by one of the Board members to assume that the Board members were her students and that someone in the room had a learning disability such as dyslexia or ADD. Ms. Poole was given another ten minutes to prepare for the presentation. When Ms. Poole attempted to lecture on the topic chosen by the Board, one of the Board members objected to her reading from her notes, and instructed her to give the presentation without reading her notes. Ms. Poole protested that she was not prepared and asked to give a lecture on the topic she had prepared. She and the Board members continued to dispute the lecture topic, and Ms. Poole was asked to leave the room. Thereafter, the Board members graded the practical examination, giving Ms. Poole an “incomplete.”
On June 15, 2005, Ms. Poole filed a “Rule To Show Cause For Mandamus" seeking to have the court direct the Board to issue her an electrology instructor’s license in accordance with La. R.S. 37:3077. In her petition for mandamus relief, Ms. Poole urged that the Board did not have authority to condition the issuance of an instructor’s license on a practical examination. She submitted that because she passed the written test and met all of the statutory requirements for obtaining an instructor’s license, the issuance of a license to her was a purely ministerial act, involving no exercise of discretion on the part of the Board. Thus, Ms. Poole 14urged, she was entitled to the issuance of a writ of mandamus ordering the Board to grant her an instructor’s license.
*963 The trial court agreed and granted the writ of mandamus, ordering the Board to grant Ms. Poole a license as an instructor of electrology pursuant to La. R.S. 37:3077. This appeal, taken by the Board, followed.
DISCUSSION
Mandamus is a writ compelling a public officer to perform a ministerial duty required by law. La. C.C.P. arts. 3861 and 3863. Mandamus is an extraordinary remedy, which must be used sparingly by the court, and only to compel action that is clearly provided for by law. Bonvillian v. Department of Insurance, 2004-0332, p. 3 (La.App. 1st Cir.2/16/05), 906 So.2d 596, 599, writ not considered, 2005-0776 (La.5/6/05), 901 So.2d 1081. Although the granting of a writ of mandamus, as a general rule, is considered improper when the act sought to be commanded contains any element of discretion, it has been allowed in certain cases to correct an arbitrary and capricious abuse of discretion by public boards or officials, such as the arbitrary refusal by an administrative body to grant a license. Bonvillian, 2004-0332 at p. 4, 906 So.2d at 599. See State v. City of Shreveport, 231 La. 840, 93 So.2d 187, 189 (1957) (wherein our Supreme Court expressly clarified that “[w]hile it is the general rule that mandamus may be invoked only to coerce performance of duties that are purely ministerial in nature, it is well settled in this state as well as in other jurisdictions that the writ mail also be employed to reach and correct an arbitrary or capricious abuse of discretion by public boards or officials ... such as the arbitrary refusal to yrant a license).” (Emphasis added).
In Charbonnet v. Board of Architectural Examiners, 205 La. 232, 17 So.2d 261, 263 (1944), mandamus was issued to the Board compelling it to issue the plaintiff a license to practice the profession of architecture in Louisiana. The 15plaintiff/applicant proved that he had fulfilled all the statutory requirements for the granting of said license. Notwithstanding, the Board denied him a license on the basis of the Board’s additional requirement by rule that, in addition to the statutory requirements, this applicant also had to have at least three years of practical training in an office of accredited architecture. The Supreme Court considered the issue of “whether the Board of Examiners is vested with the power and authority, under the law, to prescribe such qualifications as it sees fit, in addition to those prescribed by the act, as conditions precedent to its issuance of a license.... ” Id. at 263. The court concluded:
Clearly, ... the members of the Board of Examiners have misconceived their duty, power, and responsibility. The Legislature itself has prescribed the qualifications of architects and has assumed the responsibility of permitting those who hold diplomas from schools of architecture of good standing to practice the profession of architecture in this state. The Legislature did not intend to confer upon the Board of Examiners the arbitrary authority and power which it is assuming in this case.
“Generally mandamus does not lie to control the judgment or discretion of a public [official], lying only to require performance of a plain ministerial duty; but courts can control officers or official boards vested with discretionary power, when they refuse to perform official duty or so misconceive official power or duty that the purpose of the law will be defeated.”
Id. at 263-264. (Emphasis added){quoting Mauldin v. Matthews, 81 S.C. 414, 62 S.E. 695.) See also Morton v. Jefferson Parish *964 Council 419 So.2d 431, 436 (La.1982) (holding that mandamus is the appropriate procedural device to compel approval by a governing authority (in that case, the zoning board) of a permit application that was wrongfully denied); Clark v. City of Shreveport, 26,638, pp. 9-11 (La.App. 2nd Cir.5/10/95), 655 So.2d 617, 622 (where the second circuit found a zoning board arbitrarily abused its discretion in wrongfully denying a permit and that mandamus was an appropriate procedural device to compel approval by the governing authority. The court rejected City’s argument that since | (¡the decisions of the zoning board to grant or deny a variance involve discretion, mandamus is improper. Under the facts of that case, the court noted that where permits were granted in similar situations and refused in others, the refusal to grant a permit may constitute nonuniform application of zoning ordinances that is arbitrary and unreasonable. Finding that the applicant’s variance request had been refused without a valid reason, the court concluded that the refusal to grant the variance, although discretionary, was arbitrary, capricious and unreasonable; therefore, mandamus was proper. Id. at 622.)
In this appeal, the Board insists that it has authority under La. R.S. 37:3077 to determine what method its examination will encompass and has discretion to administer a practical examination in addition to a written test as a condition for licensing. The Board contends that because Ms. Poole failed the practical portion of the examination, she did not successfully achieve a minimum score on an examination administered and approved by the Board, and therefore, she did not meet all of the statutory requirements to obtain an instructor’s license. The Board submits that because Ms. Poole did not meet all of the statutory requirements, the issuance of a license to her is not a ministerial duty that can be enforced by mandamus.
Louisiana Revised Statutes 37:3077(A) states that the Board “may issue a license to any person as an instructor of electrology, subject to the restrictions provided herein and rules promulgated pursuant to this Chapter.” The use of the word “may” in the statute does not give the Board unfettered discretion in its licensing decisions or the power to develop tests on the day of testing to administer to applicants. Instead, the Board’s powers in licensing an instructor of electrology are specifically set forth and detailed by the statute.
Louisiana Revised Statutes 37:3077 sets forth specific qualifications for an instructor of electrology, requiring that the applicant:
|7[B](1) Meets all the requirements to practice electrology in this state and holds a current license to practice elec-trology in this state.
(2) Has practiced as a licensed electrologist for at least five years.
* * *
[C](2)(a) Has successfully completed the curriculum for instructor training in electrolysis in an instructor training program ...
* * ⅜
(3)(a) Successfully achieves a minimum test score on an examination administered and approved by the board.
The Board’s powers with respect to administering tests to applicants is limited by La. R.S. 37:3077(C)(3)(a). That provision requires that an examination be administered and approved by the Board. The statute further provides that:
The examination shall be given four times annually at such time and place and under such supervision as the board *965 determines and specifically at such other times as in the opinion of the board the number of applicants warrants. The board shall designate the date, time, and place of examination and shall give public notice thereof and, in addition, shall notify each person who has made application for examination to the board.
(b) Within ten days after each examination, the official in charge shall deliver the question and answer papers to the board. The board shall examine and rate the answers and shall transmit an official report to each applicant for license stating the rating of the candidate in each subject and whether or not the board approves the candidate for a license. (Emphasis added)
It is undisputed that Ms. Poole met the first three statutory requirements, and obtained a passing grade on the written portion of the examination. We find that because the Board did not have authority to condition the issuance of an instructor’s license upon Ms. Poole’s passing the practical examination the Board attempted to administer to Ms. Poole, she did in fact meet all of the statutory requirements to obtain an instructor’s license.
First, the legislation does not authorize the Board to issue a practical, non-written examination for the issuance of an electrologist instructor’s license. IsReading La. R.S. 37:3077 in pari materia with other related statutes, it becomes clear that when the legislature intended to condition the issuance of a license upon the passage of a practical examination, it did so explicitly. The failure of the legislature to specifically require a practical examination to obtain an instructor’s license was not inadvertent; rather, it was intentional and purposeful.
The licensing of electrologists is governed by La. R.S. 37:3071 which addresses the qualifications, examinations, and issu-ances of said licenses. With regard to examinations, La. R.S. 37:3071, unlike La. R.S. 37:3077, specifically provides the examination given and graded by the Board shall consist of a written examination and a practical demonstration of abilities. La. R.S. 37:3071(B)(l)(g). Section G of that statute authorizes the Board to license any person as an electrologist technician who has successfully completed the provisions of R.S. 37:3063(0(2) and passes the appropriate written and practical examination.
Having previously enacted La. R.S. 37:3071 for the licensing of electrologists specifically requiring both a written and a practical examination, the legislature was aware of and obviously chose to deviate from the language used to describe the requisite examination for an electrologist — “written and practical” — and required instead “question and answer papers” for instructor’s licenses when it enacted La. R.S. 37:3077.
Secondly, even if we were to find that the Board had the statutory authority to condition the issuance of license on the taking of a practical examination, La. R.S. 37:3077(C)(3)(a) provides that the examination must be one that is “approved by the board.” The requirement that the Board approve of the testing procedure ensures consistency and uniformity in examinations administered in response to applications. However, in this case, the record fails to establish that the Board, prior to attempting to administer the examination in conjunction with Ms. Poole’s [ 9application, approved the examination that it would use and administer.
The Board admits that there was never any formal promulgation by the Board of the practical examination that would be administered to Ms. Poole, nor were any of the discussions or e-mails regarding such *966 examination, or final vote or approval contained or recorded in any of the Board meetings. Instead, the testimony established that some Board members developed the process for administering the practical examination on the day they gave the test to Ms. Poole. Thus, it is apparent that the practical examination, which the Board attempted to administer, was one some Board members came up with specifically in response to Ms. Poole’s application, contrary to the statutory directive that the examination given by the Board be “approved” by the Board.
For these reasons, we find that the legislature did not confer the power to condition the issuance of an instructor’s license on the passing of the practical examination the Board administered to Ms. Poole. Because the requirements for licensing are clearly established by statute and Ms. Poole met all of the statutory requirements for the issuance of an instructor’s license, the issuance of the instructor’s license by the Board is a purely ministerial, non-discretionary act, which may be enforced through mandamus. Therefore, the trial court correctly ordered the Board to issue Ms. Poole a license as an instructor of electrology.
CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed. Costs in the amount of $759.25 are assessed to the appellant, the Louisiana Board of Electrolysis Examiners.
AFFIRMED.
GAIDRY, J., dissents and assigns reasons.
KUHN, J., joins in dissent.