GAIDRY, J.,
dissents.
hi disagree with the majority’s conclusion that a mandamus ordering the Louisiana Board of Electrolysis Examiners to grant an electrolysis instructor’s license to Ms. Poole was appropriate.
Ms. Poole did not, as the majority asserts, meet all of the statutory requirements for licensure. As a prerequisite to receiving an electrolysis instructor’s license, an applicant must achieve a passing score on an examination “administered and approved by the board.” La. R.S. 37:3077(C)(3)(a). Ms. Poole took only part of the examination “administered and approved by the board.” Ms. Poole testified that when she applied for an instructor’s license, she was notified the month prior to the testing that she would have to take a practical exam and that she should bring whatever materials she deemed necessary to teach. On the day of the testing, Ms. Poole completed the written portion of the exam and then refused to take the practical portion. Instead of attempting to take the practical portion or applying to re-take that portion of the exam, Ms. Poole li>filed suit to attempt to require the Board to change the makeup of the exam it approved.
The majority cites Charbonnet v. Board of Architectural Examiners, 205 La. 232, 17 So.2d 261 (La.1944), for the authority that a court can issue a mandamus to control a board vested with discretionary power when the board has acted arbitrarily and is abusing the discretion afforded it by law. However, Charbonnet is readily distinguishable from the circumstances of this case. In Charbonnet, the law at issue provided that in order to obtain a license to practice architecture, an applicant must either pass a written exam on certain specified topics in architecture or present to the Board “a diploma from an architectural college or school of good standing; said *967 standing to be determined by the Board.” Section 2, Act 231 of 1910. The Board refused to grant a license to the plaintiff without testing, despite the fact that plaintiff had both a Bachelor of Science in Architecture and a Bachelor of Architecture from the College of Engineering at Tulane University, because the Board did not consider a school to be “of good standing” if it did not require its graduates to complement their course of study with at least three years of practical training in an office of an accredited architect. By doing so, the Board was creating an additional qualification for licensure beyond those provided for in the governing statute, and the supreme court held that mandamus was appropriate because the Board was acting arbitrarily and abusing the discretion afforded it by law.
The Board of Electrolysis Examiners is not creating an additional qualification for licensure; the statute specifically vests the Board with the discretion to determine the composition of the test it will administer and approve, and the examination ultimately created by the Board in this case included both a written and practical portion. While the statute does |3specifically mention “question and answer papers,” it does not limit the examination to those papers; rather, it simply sets a time frame for the official administering the exam to return that portion of the exam to the board for scoring. In addition to the examination, the statute also provides that the Board shall make its decision regarding whether to issue a license “[a]fter investigation of the applicant and other evidence submitted.” Reading the statute as a whole, there is no “clear and specific legal right to be enforced” in this case, and there is no abuse of discretion by the Board as there was in the Charbonnet case. Therefore, I disagree with the opinion of the majority that mandamus was appropriate in this case.