312 So.2d 647 (1975)
ORLEANS PARISH SCHOOL BOARD
v.
James Russell WILLIAMS.
No. 55541.
Supreme Court of Louisiana.
April 24, 1975.
*648 Franklin V. Endom, Jr., Richard G. Verlander, Jr., Polack, Rosenberg, Rittenberg & Endom, New Orleans, for plaintiffs-applicants.
Emile W. Schneider, Lankford, Schneider & Lankford, New Orleans, for defendant-respondent.
BARHAM, Justice.
Relator, the Orleans Parish School Board (hereinafter referred to as School board), brought suit against respondent Williams, a former School Board employee, alleging that respondent overstated the number of hours he and the members of his cleaning crew worked in connection with a continuous heavy cleaning assignment; it was alleged that respondent was indebted to the School Board for $2,318.86, the amount purportedly overpaid as a result of the misstated hours of work. Respondent's answer denied that he was indebted to the School Board, and incorporated a reconventional demand. In the petition in reconvention, respondent alleged that the School Board entered into an agreement with him and his work crew whereby the crew members agreed to perform certain cleaning tasks in return for payment for eight hours' work for each day worked, regardless of the actual time spent in accomplishing the assigned tasks. Respondent further alleged that in January of 1972 a conspiracy arose to breach the terms of the agreement with respondent and his crew in furtherance of which the relator School Board sought to avoid its obligation under the agreement by determining at a hearing that respondent was indebted to the School Board for payment of hourly wages to himself and his crew in excess of wages due for hours actually worked. The respondent alleged that he was ordered by his employer to repay the money allegedly overpaid and, upon respondent's refusal to comply, was discharged. The reconventional demand avers that as a result of this conspiracy which charges that the respondent is indebted to the relator for money improperly obtained, and as a result of his discharge after twelve years of service, respondent has suffered irreparable damage to his reputation, embarrassment, loss of earning capacity and other enumerated damages.
In response to the reconventional demand, the relator School Board filed an exception of no right of action, claiming immunity from suit and liability under La. Const. art. XIX, § 26 (1921). The trial court maintained the exception and dismissed the reconventional demand. On appeal, the Fourth Circuit reversed. 300 So.2d 848. We granted writs to resolve the dispute. 303 So.2d 176.
After a thorough review of the record we determine that the most salient aspect of the case, and indeed the one dispositive of the issue of the School Board's immunity from suit and liability on respondent's reconventional demand, is the fact that the School Board submitted the issues of its relations with the respondent, and the rights and responsibilities attendant thereto, to the courts for adjudication when it instituted suit against Williams. By invoking the power and authority of the judicial system to adjust its relations with Williams vis a vis the employment agreement which allegedly led to the overpayment of wages, the School Board concomitantly waived any immunity from suit it may have possessed. In Board of Commissioners of the Port of New Orleans v. Splendour Shipping & Enterprises Company, Inc., 273 So. *649 2d 19 (La.1973), the majority expressed this idea in the following language:
"Here the Board sues, and when Splendour reconvenes on a claim arising from the same accident, the Board cries, `King's X! You can't sue me.' Not even the Board claims that its immunity is fair and justonly legal and traditional. The injustice may not be shocking to lawyers, accustomed to the frequent forfeiture of private advantage for public good. But when an unfair doctrine does not function for the public good, but only for the administrative convenience of a State agency, the court should do whatever it can to infuse justice in the relationship between the State agency and the private person."
In a concurring opinion filed in the Splendour case, Justice McCaleb stated:
"* * * the Board of Commissioners, as plaintiff in this suit against Splendour, has effected a waiver of its right to claim immunity from Splendour's reconventional demand which arises out of the same damage suit upon which plaintiff's claim is based. Such a demand, in my view, must be considered as an exception to the constitutional provision requiring legislative action to effect a waiver for, whenever the public agency seeks redress in its own Courts, it would seem but just and meet to conclude that it necessarily waives its immunity from any claim of the defendant cognate with the main demand."
In keeping with our stated position in Splendour that it is our duty "to infuse justice in the relationship between the State agency and the private person", we wholly concur in Justice McCaleb's theory of waiver which appears in his concurrence and hold that the School Board's action in seeking redress in the State's courts operates as a waiver of any immunity from suit and liability which may have existed insofar as this reconventional demand by the respondent is concerned because it is related to and arises out of the principal demand.
Thus, the Court of Appeal was correct in refusing to affirm the trial court's action in maintaining the School Board's exception to respondent's reconventional demand. However, since our decision that the School Board may not successfully interpose a plea of immunity to defeat respondent's reconventional demand is based on our determination that the School Board waived any immunity it might have had by filing the main demand, we pretermit a determination of the constitutionality of Act 67 of 1962, the basis upon which the Court of Appeal reversed the trial court's actions.
It is therefore ordered, adjudged and decreed that the judgment of the Court of Appeal be set aside. It is further ordered that the judgment of the trial court sustaining relator's exception be set aside and the exception overruled. Respondent's reconventional demand is reinstated. The case is remanded for further proceedings in accordance with the views herein expressed. Casting of costs is reserved for final disposition of the case in the trial court.
SUMMERS, J., dissents and assigns reasons.
SUMMERS, Justice (dissenting).
The Orleans Parish School Board instituted this suit against James Russell Williams alleging that he was indebted to the School Board in the sum of $2,318.86, plus interest from judicial demand. The suit is founded upon the representation that during 1971 the School Board had a number of individuals in its employ in a night cleaning crew. Williams, a long-time employee, was designated by the School Board to serve as foreman of the crew performing heavy-duty cleaning tasks at various schools on an hourly wage basis. As foreman, it was his responsibility to *650 submit reports of the time worked by the crew. Wages due the crew members were calculated on the basis of these reports.
According to the petition, Williams overstated the number of hours worked by the crew; and, as a result, $2,318.86 was overpaid by the School Board.
Williams denied the allegation of the School Board's petition and reconvened, alleging that in April 1971 the School Board designated him to supervise the experimental night work crew, who were to be paid for an eight-hour day, regardless of the actual hours worked. During January 1972 one Richard Gregory, a member of the School Board's administrative staff, and the School Board are alleged to have conspired to breach the terms of the agreement of April 1971, seeking thereby to avoid responsibility for the experimental night crew arrangement and the wages paid. One objective of the conspiracy was to compel Williams to reimburse the School Board for the overpayment of wages. When Williams refused, he was discharged from his employment with loss of twelve years seniority, pension rights, sick pay and other benefits; and, he alleges, Gregory and the School Board have prevented him from obtaining equivalent employment.
These acts, Williams alleges, have defamed his character, and he prays for damages in the amount of $82,000 against Gregory and the School Board.
To this reconventional demand the School Board filed an exception of no right of action, asserting it was immune from suit and liability by Section 26 of Article XIX of the Constitution of 1921. The trial judge maintained the exception, and on appeal the Fourth Circuit reversed. 300 So.2d 848 (1974). Writs were granted on the application of the School Board. 303 So.2d 176.
This review is limited to the ruling on the immunity exception of the School Board. Issues involving the reconventional demand against Gregory are not before the Court at this time.

I
The summary of the School Board petition and Williams' reconventional demand are in some detail because of the state of this record. The trial court necessarily considered the reconventional demand to be in tort, and the Court of Appeal also refers to the reconventional demand as a claim in tort. Williams, to the contrary, contends that his reconventional demand is "founded in contract and the damages sought are for breach of a contract." Under Williams' contention, if the reconventional demand is ex contractu, based on a contract entered into with the School Board, the School Board must be held to have waived any immunity to any claim cognate to the contract. La.Const. art. XIX, ¶ 26 (1921); La.R.S. 17:51. On the other hand, if the claim in reconvention is ex delicto, the School Board's claim of immunity is conceded to be at issue.
In Louisiana separate actions for breach of contract and in tort may concurrently arise from the same set of circumstances. Liles v. Barnhart, 152 La. 419, 93 So. 490 (1922). The character of the action given by the recovenor in his petition determines whether it is ex contractu or ex delicto. Sims v. New Orleans Ry. & Light Co., 134 La. 897, 64 So. 823 (1914). And this is to be determined by an analysis of the entire pleading and the character of the relief prayed for. Edward Levy Metals, Inc. v. New Orleans Pub. Belt R., 243 La. 860, 148 So.2d 580 (1963). Regard is to be had to the whole petition, and not to any detached expression. Kohn v. Carrollton, 10 La.Ann. 719 (1855).
One test sometimes used to determine whether the action is ex contractu or ex delicto is whether the party injured sues under the terms of the contract or whether the action is upon the breach of duty imposed by law. In the first case it is ex contractu and in the second ex delicto. *651 La.Civil Code art. 2315; Lagrone v. Kansas City Southern Ry. Co., 157 La. 559, 102 So. 669 (1925). As sometime expressed, an action ex contractu arises from a special obligation, while the ex delicto action results from the violation of a general duty. Don George, Inc. v. Paramount Pictures, Inc., 145 F.Supp. 523 (W.D.La. 1956).
Generally this Court has said that the injuries from which damages spring on account of a cause of action ex delicto are those from "injuries to persons, property, or reputation, from deceit, slander and libel, malicious prosecution, conspiracy, assault and battery, false imprisonment, seduction, trespass, conversion, infringement of patents and trade-marks, damage by animals, negligence, and offenses." (emphasis added). Sims v. New Orleans Ry. & Light Co., 134 La. 897, 64 So. 823 824 (1914).
Based upon these principles, the reconventional demand filed by Williams, taken as a whole and fairly considered, is an action ex delicto. Its principal thrust is recovery for injury to reputation by virtue of a conspiracy. It is necessary, therefore, since the reconventional demand is not on a contract, to consider the claim of immunity.

II
In this period of transition the question frequently arises whether the case is to be governed by the Constitution of 1921 or the newly adopted Constitution of 1974, which became effective January 1, 1975. The question is relevant and material in this case because the provisions of the two constitutions on immunity from suit and liability of the State contain substantial differences. La.Const. art. III, ¶ 35, and art. XIX, ¶ 26 (1921), and La. Const. art. XII, ¶ 10 and art. XIV, ¶ 26 & 33 (1974). It suffices to say for the purposes of the issue before this Court, however, that the Constitution of 1974 is inapplicable.
Section 26 of Article XIV of the 1974 Constitution states very plainly that "this constitution shall not be retroactive and shall not create any right or liability which did not exist under the Constitution of 1921 based upon actions or matters occurring prior to the effective date of this constitution." And with particular reference to the issue before the Court, Section 33 of that same article provides that "The provisions of Article XII, Section 10 waiving the immunity of the state, its agencies, or political subdivisions from suit and liability in contract or for injury to person or property only shall apply to a cause of action arising after the effective date of this constitution."

III
Although the question was not raised by the litigants, during oral argument the Court requested a supplemental brief on whether the doctrine of governmental immunity is violative of the Equal Protection and Due Process Clauses of the Fourteenth Amendment to the United States Constitution.
The answer to these questions is found in the basic principle announced in the Eleventh Amendment to the United States Constitution: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State...."
Notwithstanding the adoption of the Fourteenth Amendment, the Eleventh Amendment has received a broad interpretation consonant with its spirit. As recently as 1974, the United States Supreme Court restated the comprehensive effect of the Eleventh Amendment in Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L. Ed.2d 662 (1974):
"While the Amendment by its terms does not bar suits against a State by its own citizens, this Court has consistently *652 held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State...."

Due Process
The case of Palmer v. State of Ohio, 248 U.S. 32, 39 S.Ct. 16, 63 L.Ed. 108 (1918), where plaintiffs sued the State of Ohio for damages, is more specifically addressed to the due process question. There the Ohio Supreme Court affirmed the lower courts in dismissing the petition on the grounds that the state had not consented to be sued. On review, the United States Supreme Court said:
"This decision, the plaintiffs in error claim, vaguely and indefinitely, somehow deprives them of their property without due process of law, in violation of the Fourteenth Amendment to the Constitution of the United States.
"The right of individuals to sue a state, in either a federal or a state court, cannot be derived from the Constitution or the laws of the United States. It can only come from the consent of the state. (citations omitted). Whether Ohio gave the required consent must be determined by the construction to be given to the constitutional amendment quoted, and this is a question of local state law, as to which the decision of the state Supreme Court is controlling with this court, no federal right being involved."

Equal Protection
Equal protection is not offended by the waiver of immunity if the waiver is based upon a classification which is reasonable. Thus, while a state may grant a waiver of immunity from suit and liability in some situations and not in others, it may not grant immunity in such a way as to treat persons similarly situated differently. A classification wholly irrelevant to achievement of the state's objective is, under this rationale, contrary to equal protection, McGowan v. Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961), and if selection or classification is capricious or arbitrary, and rests on some unreasonable consideration of difference or policy, there is a denial of equal protection. Allied Stores, Inc. v. Bowers, 358 U.S. 522, 79 S. Ct. 437, 3 L.Ed.2d 480 (1959). See also Harris v. Pennsylvania Turnpike Commission, 410 F.2d 1332 (3rd Cir. 1969), cert. denied, 396 U.S. 1005, 90 S.Ct. 558, 24 L. Ed.2d 497; Cords v. State, 62 Wis.2d 42, 214 N.W.2d 405 (1974); Krause v. State, 31 Ohio St.2d 132, 285 N.E.2d 736 (1972); Crowder v. Department of State Parks, 228 Ga. 436, 185 S.E.2d 908 (1971); cf. Angelle v. State, 212 La. 1069, 34 So.2d 321 (1948). It is not a denial of equal protection to grant the state immunity from suit in tort, except through special authorization of the legislature. The class is well-defined and all within it are similarly treated.

IV
Section 26 of Article XIX of the Constitution of 1921, upon which the claim of immunity is based, was adopted in 1956 and provides in pertinent part:
"The following named commissions, boards, bodies or municipal corporations are and shall be considered special agencies of the State of Louisiana:
"(7) The parish school boards of each of the parishes of the State of Louisiana.
"The consent of the State of Louisiana to suits or legal proceedings against any of the above listed special agencies, (however heretofore given) is hereby expressly withdrawn and no such suit or proceeding shall be permitted except as provided in this section. This withdrawal of consent to suits and legal proceedings shall apply not only to suits and legal proceedings filed in the future but also to any pending suits or legal procedure.

*653 There is expressly excepted from the foregoing, suits for the enforcement of contracts entered into by any of the special agencies or for the recovery of damages for the breach thereof. Additionally, the Legislature of Louisiana may, in individual cases, by appropriate act grant to any party showing just and reasonable cause the right to sue any of these special agencies, in compliance with Section 35 of Article III of this Constitution."
In the early part of 1962 this Court had occasion to consider whether parish school boards were then immune from suit in the case of Terrebonne Parish School Board v. St. Mary Parish School Board, 242 La. 667, 138 So.2d 104. An extensive quotation from this opinion will help to set the background for the question before us:
"In considering whether the parish school boards are presently immune from suit, a short review of the pertinent legislation on the subject may be helpful. In the statute (Act 100 of 1922, ¶ 17, Par. I, now R.S. 17:51) providing for the establishment of parish school boards, pursuant to the mandate of Section 10 of Article 12 of the Constitution, these boards are made subject to suits. The statute declared that:
'There shall be a parish school board for each of the parishes, and these several parish school boards are constituted bodies corporate with the power to sue and be sued under the name and style (Name of Parish) Parish School Board * * *'. (Emphasis supplied).
"Until 1956, there was this general waiver of sovereign immunity with respect to parish school boards. The adoption of Article 19, Section 26 in 1956 had the effect of deleting from R.S. 17:51 the phrase `and be sued'. Unfortunately, the parties litigant and the courts below apparently assumed that the law rested at this point and failed to examine constitutional amendments and legislative enactments subsequent to Section 26 of Article 19 in an effort to ascertain whether its provisions, insofar as they pertain to parish school boards, are still effective. As a consequence, we have not had the benefit of argument or briefs concerning posterior laws that very definitely affect the question now before us.
"In analyzing the provisions of Section 26 of Article 19 of the Constitution, we particularly note that the withdrawal of the State's consent to sue any of the special agencies enumerated therein, is subject to two exceptions, (1) in cases seeking enforcement of contracts made by any of the special agencies or for the recovery of damages for the breach thereof, and (2) `in individual cases' whenever the Legislature has granted the right to sue, `in compliance with Section 35 of Article III of this Constitution'.
"Section 35 of Article 3 of the Constitution, as amended by Act 385 of 1946, provided merely for special legislative authorizations for a suit or suits against the State and its subdivisions in individual cases and did not comprehend a general legislative waiver of immunity which had previously existed under R.S. 17:51 as to parish school boards. However, the Legislature proposed at its regular session of 1960, by Act No. 621 thereof, a complete revision of the provisions of Section 35 of Article 3 of the Constitution which, inter alia, would vest the Legislature with more extensive powers respecting the right and authority to waive governmental immunity. This constitutional amendment was adopted by the people on November 8, 1960 and became effective on December 18, 1960. It provides, so far as pertinent here, that the Legislature is empowered to waive `* * * by special or general laws or resolutions, the immunity from suit and from liability of the state, and of parishes, * * * public boards, * * * and other public or governmental bodies; * * *'.

*654 "Thus, it is seen that this constitutional amendment effectively extended the legislative power of waiver of immunity from suit against the special agencies (school boards) enumerated in Section 26 of Article 19, which was restricted therein to individual cases, so that thereafter the Legislature was empowered to waive immunity by special or general laws or resolutions. Conformably with the authority vested in it by the 1960 amendment to Section 35 of Article 3, the Legislature, by Section 1 of Act 25 of the First Extraordinary Session of 1960, amended and reenacted R.S. 17:51 providing for the establishment of a parish school board for each of the parishes, constituting the boards as bodies corporate with the power `* * * to sue and be sued under the name and style (Name of Parish) Parish School Board. * * *' Hence, by virtue of this statute, parish school boards have been restored to their original legal status of corporate entities subject to suit which had prevailed since their establishment, save for the short period of time during which Section 26 of Article 19 affected them." 242 La. at pp. 671-675, 138 So.2d at pp. 105-107.
After the Terrebonne Parish School Board Case, it was clear that school boards were amenable to suits in tort as a result of Act 25 of 1960 of the First Extra Session of the Legislature (La.R.S. 17:51). As a result of that decision, however, the legislature in the same year hastened to restate Louisiana's policy in this area by enacting Act 67 of 1962. By this Act, Section 51 of Title 17 of the Revised Statutes was amended to again specifically require authorization from the Legislature for suits against a school board. As thus amended and reenacted Section 51 now reads:
"There shall be a parish school board for each of the parishes, and these several parish school boards are constituted bodies corporate with power to sue. The legislature hereby authorizes suits against any parish school board for the enforcement of contracts entered into by the school board or for recovery of damages for the breach thereof, without necessity of any further authorization by the legislature. No other suits may be instituted or prosecuted against any parish school board unless in each individual case the legislature first has granted to the party or parties plaintiff the right to sue the particular school board, as provided in Section 26 of Article XIX and Section 35 of Article III of the Louisiana Constitution. In suits against school boards citation shall be served on the president of the board and in his absence on the vice-president."
There have been no decisions of this Court on the immunity of school boards from suit since passage of Act 67 of 1962; however, the Second Circuit had occasion to consider the question in Watts v. Town of Homer, 207 So.2d 844 (La.App.1968). There the Legislature had not authorized suit and the court recognized the immunity of school boards from suit in tort on the basis of Section 26 of Article XIX and Section 35 of Article III of the Constitution (1921). It was implicit in that decision that, considered together, these two constitutional provisions required the consent of the Legislature to authorize suit against a school board. Apparently the Court did not find it necessary to consider Act 67 of 1962 (La.R.S. 17:51) or to rely upon that authority to support its conclusion that the school board could not be sued in tort without specific legislative authority. We refused to review that decision, finding no error of law in the judgment. 252 La. 109, 209 So.2d 39 (1968).
Although the constitutionality of Act 67 of 1962 (La.R.S. 17:51) was not pleaded specially or otherwise urged upon the Court of Appeal in the instant case, that Court nevertheless found that Act 67 of 1962 (La.R.S. 17:51) and Section 16 of Article XIX of the Constitution had been superseded by Section 35 of Article III of the Constitution. The court considered *655 this language of Section 35: "each authorization by the Legislature for suit against the State ... shall be effective and valid for all purposes, as of and from the date thereof, as a waiver of the defendant's immunity both from suit and from liability," and held Act 67 of 1962 to be unconstitutional as an attempt to override Section 35. This, we infer, meant that when we decided, in the Terrebonne Parish School Board Case, that immunity had been waived by the Legislature, immunity could no longer be granted by that body.
Aside from declaring Act 67 of 1962 unconstitutional without a special plea of unconstitutionality, Summerell v. Phillips, 238 So.2d 786 (La.App.1970), reversed 258 La. 587, 247 So.2d 542 (1971), I cannot agree with the Court of Appeal opinion that Section 35 of Article III has the effect assigned to it by the Court.
Nothing in Section 35 of Article III[1] restricts the power of the Legislature to grant immunity from suits in tort to school boards. Nor does Section 35 conflict with the withdrawal of consent to sue school boards contained in Section 26 of Article XIX. Unless the constitutional restriction on legislative power is clear and explicit, it is a fundamental doctrine in Louisiana that the Legislature is the repository of all power and authority except that denied to it by the Constitution. Joint Legislative Committee of Legislature v. Strain, 263 La. 488, 268 So.2d 629 (1972); Plebst v. Barnwell Drilling Company, 243 La. 874, 148 So.2d 584 (1963); State of Louisiana, Department of Highways v. Macaluso, 235 La. 1019, 106 So.2d 455 (1958); Ricks v. Department of State Civil Service, 200 La. 341, 8 So.2d 49 (1942); State v. Cusimano, 187 La. 269, 174 So. 352 (1937).
Particularly, Section 35 does not deny the Legislature the authority to grant the immunity from suit and liability to parish school boards contained in Act 67 of 1962. As we read it, Section 35 does not state that, once the Legislature has granted a general authorization to sue, that authorization can never be withdrawn, nor, conversely, does the language of Section 35 require that once an authorization is withdrawn that it shall never be reinstated. Section 35, instead, contains a board delegation that "the Legislature is empowered to waive, by special or general laws or resolutions, *656 the immunity from suit and from liability of the state." Since the Constitution does not thereby deprive the Legislature of the right to withdraw authorizations to sue school boards, the Legislature has that right as repository of all power not delegated or denied by the Constitution.
Any restriction on this authority must result from deductions and inferences which are not warranted in view of the unaltered meaning of Section 26 of Article XIX of the Constitution adopted in 1956, which clearly intends to withdraw the State's consent to suits against school boards, at the same time vesting power in the Legislature to grant authority to sue in individual cases.
Thus by empowering the Legislature to authorize suit, Section 35 did not deprive the Legislature of the right of withdrawing the authorization once granted. And, put another way, if the Legislature were empowered to authorize suit, it was not necessary that it do so, nor was it implicit in that grant of power that all authorizations theretofore granted were thereafter forever in effect.
In Board of Commissioners, Port of New Orleans v. Splendour S. & E. Co., 273 So.2d 19 (La.1973), this Court announced that it was withdrawing from the plaintiff board the judicially created immunity previously insulating the board from suits in tort. Here, however, the School Board's immunity is created by the Constitution in these words:
"The consent of the State of Louisiana to suits or legal proceedings against any of the above listed special agencies (however heretofore given) is hereby expressly withdrawn and no such suit or proceeding shall be permitted except as provided in this section...." La. Const. art. XIX, ¶ 26 (1921).
The School Board's immunity, then is grounded in the Constitution, not in jurisprudence. The Court is at liberty to alter the latter, but the former it must apply. I hold, therefore, that the School Board is immune from suit in this case.
And the School Board is not authorized to waive immunity as the majority holds, that right is vested in the Legislature.
I respectfully dissent.
NOTES
[1] La.Const. art. III, ¶ 35 (1921, as amended in 1960) provides:

"The Legislature is empowered to waive, by special or general laws or resolutions, the immunity from suit and from liability of the state, and of parishes, municipalities, political subdivisions, public boards, institutions, departments, commissions, districts, corporations, agencies and authorities and other public or governmental bodies; and each authorization by the Legislature for suit against the State or other such public body, heretofore and hereafter enacted or granted, shall be construed to be and shall be effective and valid for all purposes, as of and from the date thereof, as a waiver of the defendant's immunity both from suit and from liability. The Legislature shall, by special or general laws or resolutions, prescribe the procedural rules, including rules of venue and service of process, to govern suits against the state and other public bodies; the procedure in such suits, in the absence of applicable procedural rules promulgated by the Legislature, to be the same as in suits between private litigants. No judgment against the state or any other public body shall be exigible, payable or paid except out of funds appropriated for payment thereof. The Legislature may waive any prescription or peremption which may have accrued in favor of the state or other public body against any claim or claims on which suit is so authorized; and any prescription or peremption which may heretofore have accrued, or which would otherwise accrue prior to January 1, 1962, against any claim against the state or other public body on which suit heretofore has been authorized by the Legislature, is hereby waived, provided that suit on such claim is brought prior to January 1, 1962. No suit authorized under this constitutional provision shall be instituted in any court other than a Louisiana State court. In the case of any such claim on which suit heretofore has been authorized by the Legislature, and the suit was dismissed on the ground that the defendant's immunity from liability had not been waived, another suit on the same claim may be filed at any time prior to January 1, 1962, and such suit shall not be subject to the defense of res judicata based on the dismissal of the prior suit on such claim."