449 So.2d 475 (1984)
Faye D. DURHAM
v.
LOUISIANA STATE RACING COMMISSION.
No. 83-CA-2446.
Supreme Court of Louisiana.
April 2, 1984.
Rehearing Denied May 3, 1984.
William J. Guste, Jr., Atty. Gen., Robert A. Barnett, Staff Atty., John E. Jackson, Jr., Asst. Atty. Gen., New Orleans, for defendant-appellant.
Mary Olive Pierson, Cooper, Thompson & Pierson, Baton Rouge, for plaintiff-appellee.
CALOGERO, Justice.
The Louisiana State Racing Commission has appealed to this Court a judgment of the Civil District Court for the Parish of Orleans which declared unconstitutional La.R.S. 4:150 B(10) and LAC 11-6:25.18, one of the rules and regulations of racing for the State of Louisiana adopted by the Louisiana State Racing Commission (commonly referred to as Rules of Racing).[1]
*476 La.R.S. 4:150, pertaining to the Louisiana State Racing Commission, in part governs the Commission's granting and refusing licenses to racehorse owners, trainers and others; it prescribes at subsection B that an applicant for a license "shall meet the following qualifications and conditions.... (10) Is not the spouse of a person whose application has been denied or whose license has been revoked, unless judicially separated or divorced."
LAC 11-6:25 "Entries," provides at Section 25.18, in part, that "No entry shall be accepted from husband or wife while either is disqualified."
This case arose when the plaintiff, one Faye D. Durham, a licensed racehorse trainer and owner, was told by the head steward at Evangeline Downs that she had been "ruled off the track" and that her licenses had been suspended, for the reason that her husband, one Clemson Wayne Durham, had had his license suspended by the Racing Commission, and the two were not judicially separated or divorced.
At a steward's hearing which Mrs. Durham demanded, she was told that she had been suspended by the Racing Commission.
She appealed to the Racing Commission, which did not grant her a hearing within ten days as required by La.R.S. 4:154(F). Therefore she filed a petition for writ of mandamus to force a call for a hearing on her appeal, in an effort to reinstate the privileges attached to her racehorse licenses.
After several legal skirmishes (a perfunctory hearing before the Commission, a rule for contempt, defense motion to quash and dismiss plaintiff's contempt rule, petition for judicial review of court ordered hearing, supplemental petition, answers and exceptions), the trial judge ruled in favor of Mrs. Durham and against the Louisiana State Racing Commission and found both the statute, La.R.S. 4:150 B(10), and the Rule of Racing, LAC 11-6:25.18, unconstitutional and therefore unenforceable. In his judgment the trial judge specifically found the statute and rule to be a "denial of an opportunity to earn a livelihood ... of sufficient legal consequence to invoke the constitutional protection of due process of law."
For the following reasons we determine that the trial judge correctly decided favorably to the plaintiff Mrs. Durham, that LAC 11-6:25.18 is unenforceable, and that she is entitled to all of the rights and privileges normally associated with her racehorse owner's and trainer's licenses. We reverse the judgment of the Civil District Court, however, insofar as it declared unconstitutional La.R.S. 4:150 B(10) and insofar as it declared LAC 11-6:25.18 unconstitutional, rather than simply illegal and unenforceable.
Mrs. Durham, at the time she was ruled off the track, was a person duly licensed by the Louisiana State Racing Commission as a racehorse trainer and owner. She was not an applicant for a license, who, under the provisions of La. R.S. 4:150 B(10) must show among her qualifications that she "[i]s not the spouse of a person whose application has been denied or whose license has been revoked, unless judicially separated or divorced." La.R.S. 4:150 B(10) therefore, is simply not relevant to this controversy and its constitutionality therefore need not be addressed and should not have been addressed by the district court.
LAC 11-6:25.18, on the other hand, is applicable to Mrs. Durham. By providing that "no entry shall be accepted from husband or wife while either is disqualified," it effectively "rules her off" of Louisiana race tracks notwithstanding that she is otherwise a duly licensed racehorse trainer and owner. That regulation appears among the rules of racing. It does not, however, prescribe a rule applicable to her conduct. Rather it dictates to racing officials that they shall not accept an entry from a licensed trainer or owner, like Mrs. Durham, who has the misfortune of being married to a person who has been disqualified.
As interpreted by the Louisiana State Racing Commission, what that rule really *477 constitutes, then, is a determination that it shall be a cause for terminating racing privileges that a licensed trainer is married to a person who has been disqualified.
The Louisiana State Racing Commission is an agency within the Department of Commerce of the Executive Branch of the Louisiana state government. The Commission has full powers to prescribe rules, regulations and conditions under which all horse racing, upon the result of which there shall be pari-mutuel wagering, shall be conducted within the State of Louisiana. 1968 La.Acts No. 554. The Louisiana State Racing Commission thus is given broad powers. The Commission no doubt thinks that LAC 11-6:25.18 is a reasonable extension of the Legislature's determination that applicants whose spouses have had licenses denied or revoked should be denied a license of their own. Thus, the Commission would terminate the racing privileges of someone already licensed, like Mrs. Durham, whose spouse is disqualified.
Nonetheless it is not the province of the Commission to determine "just cause" for terminating racing privileges where the Legislature itself has enacted a statute on that very subject.
The Legislature has, by the enactment of La.R.S. 4:152, determined causes for termination of racing privileges of those persons who have been licensed. That statute provides:
A. The commission may refuse, suspend, or withdraw licenses, permits, and privileges granted by it or terminate racing privileges for just cause in accordance with the provisions of Subsection B of this Section. Those things constituting just cause are:

(1) Any action or attempted action by a permittee contrary to the provisions of this Part and law.
(2) Corrupt practice.
(3) Violation of the Rules of Racing.
(4) Willful falsification or misstatement of fact in an application for racing privileges.
(5) Material false statement, under oath, to a racing official, other than a commissioner, or to the commission.
(6) Willful disobedience of a commission order or of a lawful order of a racing official other than a commissioner.
(7) Continued failure or inability to meet financial obligations connected with his business, occupation, or profession performed or engaged in on the track grounds.
Thus, the Legislature has directed that the Commission may terminate racing privileges only for just cause and the Legislature has recited those exclusive "things constituting just cause."
None of the seven listed causes is applicable to Mrs. Durham, nor does this exclusive list of legislatively determined "causes" for terminating racing privileges, and for refusing, suspending, or withdrawing licenses, permits, and privileges granted by it, include the fact that a licensee's spouse has been disqualified.
The Legislature has set forth as a qualification of an applicant for a license that the applicant's spouse has not been denied, or had a license revoked. Yet in setting forth the exclusive causes for terminating the racing privileges of a person who has been licensed, the Legislature has not seen fit to include therein that same circumstance. Where legislative intent is not otherwise manifest, the maxim of statutory construction inclusio unius est exclusio alterius applies. State ex rel. Fitzpatrick v. Grace, 187 La. 1028, 175 So. 656 (1937). We apply that maxim to this case. Having included as a requirement for applicants that a spouse's license has not been denied or revoked, while excluding that same circumstance from an exclusive list of causes for the termination of the racing privileges of already licensed persons, the Legislature is presumed to have intended that the revocation or denial of a spouse's license does not provide grounds for the termination of existing licenses.
Only La.R.S. 4:152(3) gives us pause. It provides that one of the causes for terminating *478 racing privileges is "Violation of the Rules of Racing," and the Commission may argue that Mrs. Durham violates LAC 11-6:25.18. But this is not so, for 25.18 does not mandate any conduct on her part; and she has not been charged with violating this or any other rule. If she were, she would be entitled to a hearing where proof might be adduced that she has or has not done so. The truth of this latter assertion (that plaintiff was not charged with a rules violation) is evident from the Commission's "hearing" at which no evidence was taken or allowed to be heard.[2]
Rule LAC 11-6:25.18 recites a cause for disallowing the entry of a horse by a licensed racehorse owner or trainer. It is a cause which effectively terminates racing privileges, and as we have noted hereinabove, the exclusive causes for such termination, which do not include spouse disqualification, have been determined by the Legislature in La.R.S. 4:152.
We recently were presented with a similar issue concerning a regulatory agency's interpretation and application of the law that it administers in Benson & Gold Chev. v. La. Motor Veh. Com'n, 403 So.2d 13 (La.1981). In Benson & Gold, an automobile dealership with an existing license in Orleans Parish had been denied a license from the Louisiana Motor Vehicle Commission to relocate its dealership in Jefferson Parish. One of the reasons that we decided that the M.V.C. had exceeded its authority in denying the license to Benson & Gold was because the grounds on which the denial was based applied only to new applicants for a dealership license and did not apply to dealerships with an existing license. In so concluding we said at 403 So.2d 20:
Although a regulatory agency is entitled to a certain amount of hegemony over the statutes it is entrusted to administer, it cannot go too far afield from the letter of the law even if it perceives that it is furthering the law's spirit. While the jurisprudence of this state has not frequently treated matters of administrative law, the principle is well established that an administrative agency must act in conformity with its statutory authority, which it cannot exceed. See, e.g., Charbonnet v. Board of Architectural Examiners, 205 La. 232, 17 So.2d 261 (1944); Realty Mart, Inc. v. Louisiana Board of Tax Appeals, 336 So.2d 52 (La. App. 1st Cir.1976); Pearce v. Kramer, 128 So.2d 304 (La.App. 3d Cir.1961); Hunter v. Hussey, 90 So.2d 429 (La.App. 1st Cir.1956); Kramer v. State Board of Veterinary Medical Examiners, 55 So.2d 93 (La.App. 1st Cir.1951).
The Legislature, of course, may choose to add to the causes for terminating racing privileges. Indeed, they may choose to amend La.R.S. 4:152, and perhaps include therein, marriage to a disqualified person. Until the Legislature does so, however, licensed horse trainers and owners like plaintiff, Mrs. Durham, may not be denied the *479 privileges normally associated with their licenses.
Because the Commission's rule (LAC 11-6:25.18) effectively establishes a cause for terminating racing privileges which is not included among the exclusive causes set forth in La.R.S. 4:152, Rule LAC 11-6:25.18 is illegal and unenforceable. Whether it is constitutional need not be addressed.[3]

Decree
For the foregoing reasons the judgment of the trial court in favor of plaintiff Mrs. Durham is affirmed insofar as it declares Rule of Racing, LAC 11-6:25.18 unenforceable, it is reversed insofar as it declared R.S. 4:150 B(10) and Rule of Racing LAC 11-6:25.18 unconstitutional, and Mrs. Durham is entitled to have her owner and trainer racing privileges reinstated.
DISTRICT COURT JUDGMENT AFFIRMED IN PART AND REVERSED IN PART AND RENDERED.
MARCUS, J., dissents and assigns reasons.
WATSON, J., concurs with reasons.
WATSON, Justice, concurring.
The majority reaches, by following a somewhat tortuous route, the correct conclusion as to Mrs. Durham's right to own and train race horses.
It seems obvious that if an applicant for a license must certify that they are not married to a person whose license has been revoked, then it follows a fortiori, that the holder of a license cannot be a person married to one whose license has been suspended. Thus, the court should have addressed the question of constitutionality and should not say that the legislature might choose to add the status of being married to a person with a revoked license as a ground for revoking a license, the implication being that such would be within the authority of the legislature.
The provisions in question are unconstitutional and this court should say so.
Therefore, I respectfully concur in the result.
MARCUS, Justice (dissenting).
Applicants for a racehorse owner's or trainer's license to be qualified cannot be the spouse of a person whose license has been revoked, unless judicially separated or divorced. La.R.S. 4:150(B)(10). This legislative provision may not directly govern Mrs. Durham's case because she is not an applicant but rather is already duly licensed. However, the Commission may *480 suspend or withdraw licenses or terminate racing privileges for "just cause," which includes as one of the seven statutory grounds "violation of the Rules of Racing." La.R.S. 4:152(A)(3). One rule of racing provides "no entry shall be accepted from husband or wife while either is disqualified." LAC 11-6:25.18. This rule completes the legislative prohibition in instances such as this one where after a license is issued either a marriage to a disqualified person or a spouse's disqualification occurs. Thus, since an entry by Mrs. Durham as an owner or trainer while her spouse is disqualified would violate a rule of racing, I consider that the Commission had just cause to terminate her racing privileges under La.R.S. 4:152(A)(3). Moreover, I do not consider either La.R.S. 4:150(B)(10) or LAC 11-6:25.18 unconstitutional. Accordingly, I respectfully dissent.
NOTES
[1] La. Const. art. V, § 5(D) permits an appeal directly to this Court when a law or ordinance had been declared unconstitutional.
[2] The written Findings and Decision of the Commission read in part:

The Commission may be sympathetic to Mrs. Durham's dilemma, but laws and the rule of racing expressly direct this Commission in this matter.
Counsel for the Commission urged that Mrs. Durham's contentions do not state a claim upon which relief can be granted and excepts to her claims on the basis of no right or cause of action.
The Commission find merit in its attorneys' exceptions and finds that indeed considering the law and rules of racing Mrs. Durham has not presented nor can she under the legal circumstances present, a claim or contention upon which this Commission can grant the relief sought.
Mrs. Durham continues to argue the foregoing, notwithstanding, that she is entitled to present additional evidence, call additional witnesses, including several racing officials and in general conduct any type hearing she may desire before the Commission.
The Commission does not agree. The law does not require the doing of a thing which is vain, futile and useless. The Commission could not allow Mrs. Durham to race her horses if it wanted to do so and any further hearing of her contentions would not change a thing.
Accordingly the claims and contentions of Mrs. Faye D. Durham are dismissed.
[3] Mrs. Durham, in her Petition for Judicial Review, sought a judgment declaring the statute and rule unconstitutional. The trial court ruled that La.R.S. 4:150 B(10) and LAC 11-6:15.18 were an unconstitutional denial of an opportunity to earn a livelihood and consequently a deprivation of due process of law. Before this Court, Mrs. Durham argued that the statute and rule were an unconstitutional denial of equal protection and due process of law. Specifically, she argued that the statute and rule interfered with two fundamental, constitutionally guaranteed rights: the right to be free from state interference with the marital relationship and the First Amendment right of freedom of association. She also contends that the statute and rule deny her equal protection of the laws because "[m]arried and unmarried persons are treated differently in the exercise of their fundamental right of association."

The state, on the other hand, argues that the statute and rule are constitutional and not a denial of due process or equal protection. They contend that La.R.S. 4:150 B(10) and LAC 11-6:25.18, are rationally related to the achievement of a legitimate state interestprotecting the public from corrupt and dishonest horse racing practices.
Because we have determined that La.R.S. 4:150 B(10) is inapplicable in the instant case, and that the Commission exceeded its authority in relation to that portion of LAC 11-6:25.18 under attack, we need not decide the constitutional issues. As we said in Benson & Gold Chev., Inc. v. La. Motor Veh. Com'n., supra at 23:
It is a long standing judicial principle that courts will not consider constitutional challenges unless necessary to the resolution of a dispute. See, e.g., Orleans Parish School Board v. Williams, 312 So.2d 647 (La.1975); State in Interest of Toler, 262 La. 557, 263 So.2d 888 (1972); Tafaro's Investment Co. v. Division of Housing Improvement, 261 La. 183, 259 So.2d 57 (1972); Aucoin v. Dunn, 255 La. 823, 233 So.2d 530 (1970); Doss v. Board of Commissioners of Mermentau Levee District, 117 La. 450, 41 So. 720 (1906); Parish of St. Landry v. Stout, 32 La.Ann. 1278 (1880).