No. 12,066.

STATE EX REL. IRONDALE CHERT PAVING AND IMPROVEMENT COM-
PANY VS. CITY OF NEW ORLEANS ET AL.

Act No. 142 of 1894 does not expressly or by implication repeal Sec. 21 of Act No. 20 of 1882 (Charter of the City of New Orleans), in regard to contracts for public works.

The city of New Orleans has not only the power to recede from their announced intention of having the streets paved, but after the reception of bids it has the unquestionable right to reject any and all bids.

APPEAL from the Civil District Court for the Parish of Orleans. *Rightor, J.*

*W. S. Parkerson* for Plaintiff, Appellant.

*W. L. Hughes* for Intervenor, Appellee.

*E. A. O'Sullivan,* City Attorney, for Defendants, Appellees.

Argued and submitted February 29, 1896.
Opinion handed down March 23, 1896.

Relator alleges that it was engaged in the business of paving streets—that it was a duly qualified bidder and had complied with all laws and ordinances relative to its said business. On the 28th day of March, 1895, the Common Council of the city of New Orleans, by Ordinance No. 10,499, Council Series, gave notice of intention to pave Valmont street, between St. Charles and Magazine streets, in this city, under Act 119 of 1896, as amended by the act of the General Assembly of the State of Louisiana, No. 142 of 1894. Within the delay provided by law a majority of the property owners on said street petitioned for and designated Irondale Chert, from the Irondale Chert and Paving Company, as the material with which to pave said street; after due formalities, bids were received by the said Comptroller of the city, in pursuance of advertisement: they were duly opened by the finance committee, and the bid of the Irondale Chert Paving and Improvement Company was favorably reported by said committee to the Common Council for adoption. The Common Council rejected the bid, and altered and amended the said ordinance and inserted therein the words " or its equal the same as laid on Frenchman street," and instructed the City Comptroller to advertise for bids under the ordinance as thus amended. This was

done; in due course the finance committee of the City Council, after due hearing, again favorably reported the bid of the Irondale Chert Paving and Improvement Company, and recommended it to the Council for adoption; the Council, at its next meeting on the night of Decemcer 9, 1895, struck out the name of the Irondale Chert Paving and Improvement Company from the said ordinance, then on final passage, and inserted therein the name of one J. A. Andrews & Son. The ordinance as thus adopted was sent to the Mayor of the city for his signature.

The relator brought this action, and prayed that a writ of injunction issue enjoining and restraining the Mayor from signing or attempting to sign the ordinance adjudicating the said contract to J. A. Andrews & Son, or from entering into a notarial contract thereunder with the said J. A. Andrews & Son, and for a writ of *mandamus* directing and commanding the said Common Council and each and every member thereof to vote for the ordinance assigning said contract for the paving of Valmont street from St. Charles to Magazine street to relator, commanding the Mayor to sign said ordinance so passed, and to enter into a notarial contract with relator for the said paving upon relator's complying with the law in such case made and provided; and that the City Council and each and every member thereof be enjoined and restrained from taking any further step toward assigning said contract to J. A. Andrews & Son.

The District Judge issued an order that the defendants show cause why writs of injunction and *mandamus* should not issue as prayed for, and that a temporary restraining order issue in the meanwhile.

An intervention for the purpose of assisting relator in its suit against the defendants was filed by Gus. Beck, a resident of the city of New Orleans and a taxpayer thereof, owning a large amount of real estate therein, among the property so owned being a large amount of real estate fronting on Valmont street, between St. Charles and Magazine, he alleging that he was one among the majority (in number and in measurement) of the property owners on said Valmont street who signed a petition to the City Council, and designated Irondale Chert, from the Irondale Chert and Improvement Company, as the kind of chert or stone pavement which they desired to be laid upon said street; and that Irondale Chert was the kind of chert selected, chosen and designated by the said property holders.

He adopted as his own the allegations of relator's petition, and intervened for the purpose of enforcing the rights of the tax-payers and property owners under Act No. 142 of 1894, praying that the writs of injunction and *mandamus* be made peremptory and perpetual. After hearing the parties, the District Court ordered that the application of the relator be denied and that the interven-tion of Beck be dismissed.

Relator appealed.

On behalf of the defendants it is claimed that the positions taken by them, in answer to the rule against them in the District Court to show cause, were—

1. That Act No. 119 of 1886, amended by Act No. 142 of 1894, does not grant the power which relator seeks.

2. That the Council is never under any circumstances regarded as a ministerial body.

3. That no *mandamus* can be issued to the Council to perform an act such as the relator is attempting to have performed in this cause.

4. That under the law the Council may accept any and all bids or reject any or all bids.

5. The plaintiff shows no cause of action.

Defendants further say that the Council assigned among other reasons why the bid of the relator was not accepted and why that of J. A. Andrews & Son was, that the firm of J. A. Andrews & Son were bidders for the contract and the bid of J. A. Andrews & Son was much lower than that of the relator. The brief contains an itemized statement of the bids of the two parties and a column showing, if correct, that relator's bid was the higher of the two. Relator does not controvert that fact. No reference is made in relator's petition to J. A. Andrews & Son having been a bidder for the work, nor is there an averment that its own bid was the only one or the lowest of those made.

Relator says that its contention succinctly stated is "that when the City Council declared by ordinance its intention to pave Valmont street and the property holders within the ninety days specified in the act (Act 142 of 1894) designated the kind of material with which they wished the street paved, it then became the ministerial duty of the Council to pass an ordinance in due course for the pavement of the street with the material so designated. That the discretionary power of the Council was exhausted when, by ordi-

nance, it declared its intention to pave the street. Its ministerial duty commenced when the property holders had exercised their rights under the act.''

Relator also contends that the property holders in the exercise of the right given them by the statute had the right to desigate by name the company from which the chert (the material with which the street was to be paved) should be obtained, or the patentee of any proprietary article if they chose to do so.

Referring to Act No. 114 of 1894 relator urges that '' prior to its passage the Council had the right to select and designate the kind of material with which the street should be paved. Property holders, it is true, had a right to petition for particular kinds of pavement, but the granting of the request was a matter entirely within the discretion of the Council. * * * The act of 1894 does two things; it gives the property holders a right which had, theretofore, vested with the Council and it takes away from the Council the discretion which up to that time it had possessed.''

The opinion of the court was delivered by

NICHOLLS, C. J. We do not understand relator to advance any claim based upon the fact that it was the only bidder under the first offer for the work which called for bids for paving Valmont street with concrete chert from the Irondale Chert Paving and Improvement Company.

The company acquiesced in the action rejecting its bid and re-offering the contract. Relator became a bidder at the second offering, which called for paving of Valmont street with concrete chert from the Irondale Chert Paving and Improvement Company '' or its equal the same as laid on Frenchman street.'' It asserts its right in this proceeding to have the contract for the paving adjudicated to it under the bid which it then made. It was stated from the bar that the work on Frenchman street had been executed by the plaintiff company. An examination of the City Charter (Act No. 20 of 1882) shows that by the twenty-first section of that act—

'' All contracts for public works or for materials or supplies ordered by the Council shall be offered by the Comptroller at public auction and given to the lowest bidder who can furnish security satisfactory to the Council, or the same shall at the discretion of the Council, be advertised for proposals, to be delivered to the Comp-

troller in writing, sealed, and to be opened by said Comptroller in presence of the finance committee of said Council, and given to the person making the lowest proposal therefor who can furnish security satisfactory to the Council; *provided*, that the Council shall in either case have the right to reject any or all bids or proposals.''

The thirty-seventh section of the charter authorized the Council at its discretion to provide for the paving or banquetting of any street or portion thereof, and directed the method of making payment for the work. The section was amended by Act No. 119 of 1886, so as to read as follows: ''The Council may in its discretion provide for the paving or banquetting of any street or portion thereof, at the expense of the whole city, and may thereupon force, impose and collect, on paving, of the front proprietors of lots fronting on said street, a special assessment in proportion to frontage, of three-quarters of the cost of said improvement, and such local assessment shall have a first privilege superior to vendor's privilege and all other privileges and mortgages. The other one-fourth, in addition to intersections to be paid by the city: on banquetting the whole cost to be collected from front proprietors. A two-third vote of the members of the Council is required to order said banquetting or paving, and whenever the Council shall deem it necessary to take such action, notice of such intention shall be published in the official journal once a week for four weeks, and such improvements shall be subject to the conditions already prescribed for improvement or repairs to be made on compliance with the petition of property holders and payment thereof shall be assumed and collected in like manner.'' Act No. 119 of 1886 was itself amended by Act No. 142 of 1894, the portion of the act affecting the question now before the court being found in the *proviso* of the third section of the new act. The third section reads as follows:

'' A two-third vote of the City Council shall be necessary to pass any paving or banquetting ordinance, and whenever the Council shall deem it necessary to take such action, notice of said intention shall be published in the official journal once a week for four weeks, no further notice being required.

''Provided, a majority of the property holders in number and measurement on the street or sidewalk sought to be paved or banquetted shall have the right to designate the kind of gravel, stone, bricks, or Schillinger to be used, by petitioning the Council

within ninety days after such publication by the Council, giving notice in the official journal to pave or banquette said street or sidewalk."

We know of no law repealing the 21st section of Act No. 20 of 1882, requiring that contracts for public works should be offered at public auction, and that the contracts should be awarded to the lowest responsible bidder, but conferring upon the City Council the right to reject any or all bids or proposals.   There is nothing in Act No. 142 of 1894 which, either expressly or by implication, repeals that section.   Relator's claim is totally untenable that the moment the Council, by ordinance, exercised the discretion vested in it in determining that Valmont street should be paved, and the moment the property holders exercised the privilege accorded them under Act No. 142 of 1894 of selecting the particular material with which the street was to be paved, matters became so fixed that the Council was utterly without authority to recede from its determination to have the street paved, and stood charged thenceforward " with the ministerial duty of passing an ordinance, in due course, for the pavement of the street with the material so designated " that " its discretionary power was exhausted when, by ordinance, it declared its intention to pave the street; that its ministerial duty commenced when the property holders had exercised their rights under the act."

The city, as well as the property holders, has an interest in this matter, for upon it, in case of the execution of the work, would be thrown a large proportion of the cost.   It has not only the power to recede from having the street paved, but after the reception of bids it has the unquestionable right to reject any or all bids offered.

Relator became a bidder at the second offering of the contract, and under the terms of the advertisement then made.   It insists upon having rights claimed to have been derived through and by that bid recognized and enforced.   We do not think the terms of the advertisement play any part in the issues presented to the court, for whatever may have been those terms or the character of the bids, we think the Council had unquestionably, as we have said, the power and right to reject them, if in its opinion the public interests would not be subserved by accepting them.   We do not think that the right of the City Council of declaring in favor of paving a street with a patented article, offering a contract for the paving of a street with material of a particular kind held for sale by

a particular person and accepting a bid made by the owner of the patented article or the special holder of designated material, is involved in this suit. Had such a condition of affairs existed the suit would have been either one to resist payment of assessments made under a contract entered into under these circumstances, or one brought by a party in interest to have such a contract annulled. The real contention here is that when a bid is made at a public offering for paving a street by a person offering to do the work with the material selected by the property holders, the Council is absolutely bound to accept the bid and enter into a contract with the bidder, regardless of the amount of the bid or the advisability in the judgment of the public authorities of executing the work upon the terms offered.

We have examined the cases of the Barber Asphalt Company, 100 Missouri, p. 25; *In re* Dugro, 50 N. Y. 513; Baird vs. Mayor, 96 N. Y. 567; Hobart vs. Detroit, 17 Mich. 246; Dean vs. Charlton, 23 Wis. 590; Mills vs. Charlton, 29 Wis. 400, and Dean vs. Bouchsenius, 30 Wis. 236, all bearing upon the right of a Common Council to offer to receive bids for paving streets with a patented article, to accept such bids and to enter into contracts based on them; but these decisions (presenting different views of the same question), are not pertinent to the particular questions submitted to us in this litigation.

In one of those cases (Hobart vs. City of Detroit), Chief Justice Cooley, in upholding the authority of a Common Council to enter into such contracts, replied to one of the arguments urged against the recognition of such a power as follows: "The security of the city against combinations and extravagant contracts in such cases must rest in the power which the Common Council possess, to reject any bid which they might regard as unreasonable—a power which the Legislature have evidently considered of some value, as otherwise they would have made the fact of lowest bid conclusive and the execution of a contract in accordance with it compulsory." We think the power of the city of New Orleans to reject any and all bids has been left by the Legislature untrammeled.

In holding that the Council was not forced to accept plaintiff's bid, we dispose of the whole case. Relator's pleadings are not framed with reference to raising issues between J. A. Andrews & Son and itself as to their respective rights as bidders. No attack is

made upon the rights of that firm except, consequentially, as the forced legal result of a recognition of relator's having pre-existing vested rights.

The record does not inform us of the character of their bid. Defendants inform us that it was lower than that of the plaintiffs. Be that as it may, J. A. Andrews & Son have not been made parties to this litigation and we can not pass upon their rights in their absence.

Judgment affirmed.