358 So.2d 353 (1978)
Charles C. FOTI, Jr., Criminal Sheriff for the Parish of Orleans
v.
ORLEANS PARISH SCHOOL BOARD, Dr. Gene Geisert, Superintendent of the Orleans Parish School Board, et al.
No. 9263.
Court of Appeal of Louisiana, Fourth Circuit.
April 11, 1978.
*354 Polack, Rosenberg, Rittenberg & Endom, Samuel I. Rosenberg, Richard G. Verlander, Jr., New Orleans, for defendants-appellants.
Usry, Leefe, Hartley & Stahl, T. Allen Usry, John F. Weeks, II, Leroy A. Hartley, New Orleans, for plaintiff-appellee.
Before STOULIG, BEER and GAUDIN, JJ.
BEER, Judge.
Orleans Parish School Board appeals from a district court judgment mandating acceptance of the offer of appellee, Foti, Criminal Sheriff for the Parish of Orleans, to purchase property at 700 S. Rendon Street in New Orleans (Fisk Elementary School).
The Criminal Sheriff, acting under federal court order, sought additional incarceration facilities. Fisk had been closed by the School Board in 1974. Foti believed that the site could be well used as a restitution center where probationers would be housed and provided with a job which would enable them to make restitution to the victims of their offenses.
The School Board, at its April 5, 1976 meeting, directed its staff to investigate the possibility of a lease or sale of Fisk for such use including the impact on the neighborhood. By the time of its October 11, 1976 meeting, a large number of area residents had heard of and were actively protesting the sale of Fisk to the Sheriff, reasoning that the area was already saturated with criminal detention facilities. (Parish prison, central lockup, and the house of detention are all in the same area.) The Board voted (3-2) to reject a motion to sell Fisk to Foti for the appraised price of $60,000.
Foti again appeared at a School Board meeting on October 25, 1976, requesting that the Board sell or lease the Fisk site and/or the former Wicker Elementary School site on Bienville Street. The Board again adopted a resolution directing a study of the request. At a November 8, 1976 meeting of the Board, a number of citizens again protested, and, at a November 15, 1976 meeting, with citizens' protests still the order of the day, the Sheriff took his white handkerchief from his pocket, waved it at the audience, and declared that he withdrew his proposals.
Later in November, 1976, the Fisk facility was advertised for sale by the Board, and sealed bids were solicited. The proposal contained the following language: "The Orleans Parish School Board reserves the right to reject any and all bids." The only bid received was that of Sheriff Foti, for $70,030, clearly in excess of the required $60,000 minimum bid. At its January 24, 1977 meeting, a motion to accept the bid failed to carry, and at the next meeting on February 14, 1977, a motion to accept the bid was defeated 3-2.
As a result of suit instituted by the Sheriff, a temporary restraining order issued, prohibiting the Board from disposing of the *355 property other than by sale to the Sheriff. Subsequently, a permanent injunction issued, from which appellant, the School Board, has suspensively appealed.
La.R.S. 17:87.6 provides that any parish school board may sell surplus school property at private or public sale, and La.R.S. 41:891 et seq., provides for sale at public auction, or under sealed bids, of school property in cases in which the best interest of the public school system would be served thereby.
The jurisprudence has long recognized the right of a public board to reject all bids in cases involving public contracts. In State ex rel. Irondale Chert Paving & Improvement Co. v. City of New Orleans, 48 La. 643, 19 So. 690 (1896), the city of New Orleans, acting under its city charter which gave it the right to reject any and all bids, advertised for and received bids for performance of a paving contract. Its action in rejecting all bids was upheld by the Louisiana Supreme Court, which set the following standard for rejection:
"We do not think the terms of the advertisement play any part in the issues presented to the court; for, whatever may have been those terms, or the character of the bids, we think the council had unquestionably, as we have said, the power and right to reject them, if, in its opinion, the public interests would not be subserved by accepting them. (Emphasis added.)" Id., at 693.
In D. J. Talley & Son, Inc. v. City of New Orleans, 303 So.2d 195 (La.App. 4th Cir. 1974), we affirmed the right of a public body acting under the public bidding statute, La.R.S. 38:2212, to reject all bids. There, because of uncertainties in the bid specifications of the lowest bidder for performance of a public contract, all bids were rejected and the city readvertised for bids and accepted one of the second group of bids. The lowest bidder of the first group sought a mandamus to compel the city to accept its bid. We noted:
"The clear language of L.R.S. 38:2212 states the following in pertinent part. `The governing authority may reject any and all bids.' This law does not impose any limitation upon the governing authority in its rejection of all bids. The purpose of the public contracts law is to protect tax paying citizens against contracts of public officials entered into because of favoritism and involving exorbitant prices. [Citations omitted.] To require the governing authority to enter a contract simply because it has advertised for bids would certainly destroy its ability to achieve a fair price within the budgeted amount of the project.
"When a contract is awarded, it must be awarded to the lowest responsible bidder, but the court has no power to require the acceptance of a bid, and the court recognizes the right of the governing authority to reject all bids. [Emphasis added.]" Id., at 197.
In cases involving rejection of the lowest bid for a public works contract, and acceptance of a higher bid, the right of the public board to reject all bids has been acknowledged in dictum. See, e. g., Gurtler, Hebert & Co. v. Orleans Parish School Board, 251 So.2d 51 (La.App. 4th Cir. 1971); Housing Authority of Opelousas, La. v. Pittmann Constr. Co., 264 F.2d 695 (5th Cir. 1959).
It is suggested by appellant that, in the absence of cases interpreting La.R.S. 41:892, the standard of review by which its action must be tested is that used in analogous cases under the public bidding statute involving the rejection of the lowest bidder for performance of a public contract in favor of another bidder. In those cases, it has been held that the bid of the lowest responsible bidder must be accepted. In determining the responsibility of bidders, public boards have been given wide discretion. In Housing Authority of Opelousas, La. v. Pittmann Constr. Co., supra, at 703, the court stated:
"From these and other cases it is clear that Louisiana follows the general rule of vesting an awarding body with discretion subject to judicial review. Courts will not substitute their judgment for the good faith judgment of an administrative agency, but an awarding body's administrative *356 discretion must be exercised in a fair and legal manner and not arbitrarily.
"The Board has the right to be wrong, dead wrong; but not unfairly, not arbitrarily wrong."
Accordingly, in Housing Authority of Opelousas, La., supra, the action of the Board in rejecting plaintiff's bid was found illegal for the reason that the Board had unfairly deprived plaintiff of an opportunity to disprove charges of irresponsibility.
The rationale of applying the test of arbitrariness and capriciousness to the actions of a public board in rejecting the lowest bid and accepting another has been stated as protection of the public interest in securing competition and protection of the taxpayer from exorbitant prices. It can readily be seen that similar policy interests exist where public property is to be sold, i. e., the interest in securing a fair price for the property and of promoting competition for such purchases. To permit the arbitrary refusal to accept all bids would result in a loss of public confidence in the bidding procedure. It might also result in lower bidding in a second round of bidding by those who were made aware by the first round of the perhaps limited demand for certain property. Thus, the least that is required of a public body before rejecting all bids is a reasoned consideration of the effect on its constituency of such a rejection.
The standard set by the trial judge in his reasons for judgment were ". . . this rejection must be on a basis that can be considered reasonable, and not for political reasons." As we see it, the pertinent inquiry is whether the Board acted reasonably and for reasons within the scope of its function in rejecting the Foti bid. The location per se of rehabilitative or corrective facilities is outside of the proper decision making sphere of the School Board, as is the feeling of the area residents as to the effect of such a facility on their persons while at home or on the streets. However, the effect of such a center on the safety of school children en route to school, or the effect on the $2 million investment in a new school in the area, may well be within their proper sphere of concern.
Testimony of the Board members who voted against the Sheriff's bid is illuminating. Member Harwood "Woody" Koppel testified that his decision was based on matters properly the concern to the School Board. The testimony of member Rose Mary Loving also showed a concern for school related matters. Dr. Mack Spears, who also voted against the sale, did not specify school oriented reasons for his vote and seemed to focus on the general safety of the residents. It is difficult to say, however, that the welfare of school children was not included in his concerns.
On the other hand, there is no evidence that the School Board staff, commissioned to determine the effect of the facility on the neighborhood, ever made its report. Also, it cannot be doubted that the public outcry and unpopularity of the facility influenced the members of the Board.
Though innumerable Louisiana cases denied mandamus where the actions of public officials was discretionary, mandamus has issued to compel performance where an abuse of discretion was found.
In Charbonnet v. Board of Architectural Examiners, 205 La. 232, 17 So.2d 261 (1944), the Supreme Court affirmed a judgment issuing a mandamus to compel the defendant Board of Architectural Examiners to issue relator a license to practice as an architect. Act 231 of 1910, setting forth requirements for certification, required only that the applicant present a diploma from an architecture school in good standing, or pass a satisfactory exam on specified subjects, and also that the applicant be 21 years of age, of good character, and possess a good primary education. The statute directed that when such requirements were met, the Board "shall" issue the certificate. The Board refused the certificate on the grounds that applicant had not met an apprenticeship requirement. Concerning the decision of the Board to impose such requirement, the court commented as follows:

*357 "Clearly, we think, the members of the Board of Examiners have misconceived their duty, power, and responsibility." Id., at 263.
In support of issuance of a writ of mandamus, the court cited State ex rel. Mauldin v. Matthews, 81 S.C. 44, 62 S.E. 695, in which the Supreme Court of South Carolina said:
`"Generally mandamus does not lie to control the judgment or discretion of a public [official], lying only to require performance of a plain ministerial duty; but courts can control officers or official boards vested with discretionary power, when they refuse to perform official duty or so misconceive official power or duty that the purpose of the law will be defeated." `Charbonnet, supra at 264.
In State ex rel. Day v. Rapides Parish School Board, 158 La. 251, 103 So. 757 (1925), the defendant Board closed the schools for a year for the reason that it was financially impossible to remain open and yet comply with Sec. 32 of Act 100 of 1922 which required conversion from calendar year to fiscal year basis. The court found that the statute in question, which also authorized defendant to borrow money to keep the schools open, contemplated that the schools remain open. The court observed:
"The school districts in that parish are entitled, at all events, to the delay granted them by the statute, and may yet be able to adjust their finances by July 1, 1928, according to the requirements of section 32 of said act. The closing of the public schools in the various school districts of Rapides parish by respondent board is based, therefore, upon a wrong interpretation of section 32 of Act 100 of 1922, is unauthorized, and is arbitrary action upon the part of said board, by reason of a mistaken view of the law. Mandamus will lie in such a case." Id., at 760.
Although the two cases discussed above are the only Louisiana cases found in which misunderstanding of the extent of discretion afforded by the law was the basis for mandamus, the principle was upheld in dictum in State ex rel. Bank of Franklinton v. La. State Board of Agriculture and Immigration, 122 La. 677, 48 So. 148 (1909). Relator sought mandamus to compel acceptance of its bid as that offering the highest rate of interest on State funds, and also sought an injunction to prevent acceptance of other bids. Defendant had rejected relator's bid on the grounds that because of the distance the funds would have to be transported from the capital to the bank, the bid was not the safest. The court found that the mandamus which would fit this case was one compelling the Board to pass upon the bids merely on the basis of safety of the funds once they had reached the bank, which was the intent of the statute. Relator had asked for a mandamus to compel acceptance of its bid, which was not proper in light of the fact that there remained the necessity for a discretionary decision as to reliability of the funds in the bank. Mandamus was denied because relator had not asked for the proper mandamus, but in dictum, the following analysis was made of the case:
"And we are equally clear that defendant's function in ascertaining which bank has `offered the highest rate of interest' is confined to comparing the face of the bids. Defendant is not asked, or required, to dispose of the funds to the best advantage, or in such a way as to bring the largest return; but simply to invite bids by published advertisements, and to open the bids as soon as possible and publicly, and let the funds to the highest bidder.
"The only discretion defendant is invested with is to determine whether the bids are regular, and whether the bank whose bid is highest on the face of the papers would be a safe depositary in the sense of safely keeping and restoring the funds. The defendant has thus far, as a matter of fact, not yet exercised that discretion; but has gone out of its way to determine a question it had nothing to do with, namely, whether there would be expense or danger to the funds in transmission to *358 and from a distant bank. The law applicable to such a case is stated in 19 A. & E. E. 739, as follows:
"`If, by reason of a mistaken view of the law, or otherwise, there has been in fact no actual and bona fide exercise of discretion, as, for instance, where the direction is made to turn upon the matters which under the law should not be exercised, mandamus will lie.'"
For similar dictum, see also, State ex rel. Kohler's Snowite Laundry & Cleaners, Inc. v. State Board of Commerce and Industry, 205 La. 622, 17 So.2d 899 (1944).
Mandamus has also issued where an outright abuse of discretion for political reasons was found. In two similar cases, the respective salaries of two village marshals were decreased, purportedly for economic reasons, although no comparable decreases of other officials' salaries were made. It was held that mandamus would lie to compel restoration of the prior salary where the decrease was made arbitrarily and for political reasons. State v. Village of Roseland, 21 So.2d 96 (La.App. 1st Cir. 1945); State ex rel. Meaux v. Village of Morse, 6 So.2d 221 (La.App. 1st Cir. 1942).
Finally, the jurisprudence supports issuance of mandamus where the official action sought to be compelled is held to be purely ministerial and therefore mandatory. Bussie v. Long, 257 La. 623, 243 So.2d 776 (1971) (mandamus to compel tax commission to fix assessments according to actual cash value where statute so required); Schwegmann Bros. Giant Super Markets v. Edwards, 323 So.2d 810 (La.App. 4th Cir. 1975), writ ref., La., 326 So.2d 503 (mandamus to compel defendant to grant permit to Mississippi dairy to import milk where it was held that statute made permit issuance mandatory in spite of State's authority to inspect milk and require Louisiana Grade A standards be met).
Here, the School Board advertised for bids for the purchase of public property, and set a minimum acceptable amount. Under La.R.S. 41:892(D), its discretion with regard to the rejectance of any and all bids, though not necessarily limited to consideration of the financial reliability of the bidder, could not depend on factors beyond the bounds of the discretion reasonably vested in it.
The record supports the trial court's essentially factual determination that however well (or otherwise) intentioned, the Board went beyond its proper sphere of concern, notwithstanding the after-the-fact testimony of various Board members. We find no abuse of discretion in this critical trial court appraisal of the evidence. The judgment is affirmed.
AFFIRMED.